■ In the Matter of BLEECKER STREET MANAGEMENT CO., Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent. [727 NYS2d 76] —Order, Supreme Court, New York County (Diane Lebedeff, J.), entered October

26, 2000, which denied petitioner's application to annul the determination of respondent New York State Division of Housing and Community Renewal (DHCR) that certain apartments in a residential cooperative remain subject to rent control, and that there are no unique or peculiar circumstances warranting an adjustment of rents for such apartments, unanimously affirmed, without costs.

At issue is whether Real Property Tax Law § 489 (7) (b) (2), as amended by chapter 289 (§ 2) of the Laws of 1985, applies to rent controlled units. Pursuant to RPTL 489 (1) (a), authorizing local governments to adopt local laws implementing a real estate tax exemption/abatement program, the City of New York enacted Administrative Code of the City of New York § J51-2.5 (now § 11-243). The statutory scheme originally provided that multiple dwellings receiving tax exemption/abatement benefits were to be subject to rent control for the period during which benefits were received but would cease being rent controlled upon termination of the benefits. The 1985 amendment in issue provides for the continuation of "rent regulation" until the first vacancy after the expiration of the benefits with respect to dwellings subject to such regulation on or before the effective date of the amendment, June 19, 1985.

Petitioner argues that because RPTL 489 is an enabling statute, and because the New York City Council has never enacted legislation adopting the 1985 amendments, DHCR lacks authority to apply the amendments. Although this claim is made for the first time on appeal, we nevertheless consider it as it involves solely a question of statutory interpretation (*see, Matter of Richardson v Fiedler Roofing*, 67 NY2d 246, 250). We conclude that the City has adopted the 1985 amendments by virtue of later City Council Resolutions renewing the rent control laws subject to any amendments that may have been enacted into law (*see, e.g.*, NY City Council Resolution No. 1237 of 1988; Resolution No. 1122 of 2000). This conclusion is supported by the fact that the New York City Department of Housing Preservation and Development (HPD), the City agency charged with administering the J-51 program, has promulgated regulations implementing the 1985 amendments (*see*, 28 RCNY 5-03 [f] [3] [i] [A]). Contrary provisions of the New York City Rent and Eviction Regulations in 9 NYCRR 2200.2 (e) (3) were effectively invalidated by chapter 289 of the Laws of 1985, and therefore could be disregarded by DHCR.

DHCR's conclusion that petitioner's apartments, which were subject to rent control on June 19, 1985, remain subject to rent control, notwithstanding the termination of tax benefits on

June 30, 1992, until a vacancy occurs, is not irrational or unreasonable (see, *Matter of Salvati v Eimicke*, 72 NY2d 784, 791; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459). RPTL 489 (7) (b) (2), as amended, provides that any dwelling unit subject to "rent regulation" on or before June 19, 1985 as a result of receiving a tax exemption or abatement "shall be subject to *such* regulation" until the first vacancy after tax benefits expire (emphasis added). Facially, the language is clear. Petitioner's reliance on the reference to "rent stabilization" in the preamble to chapter 289 to argue that the statute is limited to rent stabilized units is misplaced (see, McKinney's Cons Laws of NY, Book 1, Statutes § 122), particularly since the preamble refers to both "rent stabilization" and "rent regulation." Use of the broad term "rent regulation" in section 489 (7) (b) (2) itself indicates recognition of units subject to either rent stabilization or rent control. Nor does the ensuing reference in section 489 (7) (b) (2) to leases mean that the section applies only to rent stabilized units. In this regard, the statute provides that rent regulation, i.e., rent stabilization, will cease upon expiration of tax exemption/abatement benefits if the tenant is provided with a lease informing him or her that such deregulation will occur and the approximate date thereof. However, the statute goes on to provide that there is to be no deregulation, i.e., rent control as well as rent stabilization, as the case may be, is to continue regardless of the expiration of tax exemption/abatement benefits or the occurrence of a first vacancy thereafter, if the unit would have been otherwise subject to regulation had there been no rent exemption/abatement program. Further, RPTL 489 (7) (b) (1), as amended by chapter 288 of the Laws of 1985, signed into law the same date as chapter 289, refers to units subject to the "the local emergency housing rent control act," i.e., the rent control law in the City of New York (L 1962, ch 21). Thus, section 489 distinguishes rent regulation from rent control or rent stabilization. We also note that DHCR's determination is in keeping with the remedial purposes of the statute and consistent with *Matter of Sack v New York State Div. of Hous. & Community Renewal* (250 AD2d 537, *lv denied* 93 NY2d 802), holding that rent regulation, specifically rent stabilization, recommenced after a three-year hiatus by virtue of the enactment of chapter 289 of the Laws of 1985.

DHCR's determination, finding no "unique or peculiar" circumstances warranting an adjustment of rents pursuant to New York City Rent and Eviction Regulations (9 NYCRR) § 2202.7, has a rational basis in the record and is not arbitrary and capricious. Concur—Rosenberger, J. P., Williams, Wallach, Lerner and Friedman, JJ.