**NASH FINCH COMPANY, Appellant,**

v.

**CITY COUNCIL OF THE CITY OF CEDAR RAPIDS, Iowa,**
**Appellee.**

No. 02–1189.

Supreme Court of Iowa.

Dec. 17, 2003.

Mark A. Roberts of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellant.

James H. Flitz, City Attorney's Office, Cedar Rapids, for appellee.

TERNUS, Justice.

Appellant, Nash Finch Company, appeals from a district court judgment upholding the action of appellee, City Council of the City of Cedar Rapids, suspending Nash Finch's permit for the sale of cigarettes based on the company's second violation of Iowa Code section 453A.2(1) (1999). Nash Finch contends the district court erred in holding two company stores were the same "place of business" for purposes of aggregating offenses under Iowa

Code section 453A.22. Finding no error, we affirm.

### I. *Background Facts and Proceedings.*

In 1999, Nash Finch owned and operated four Econofoods stores in the Cedar Rapids area, including one at 2300 Edgewood Road S.W. This store was the only Econofoods store on the west side of Cedar Rapids, and was known internally as Econofoods # 465. (We will refer to this establishment as store # 465 throughout the remainder of this opinion.) Cigarettes were sold at this location under the authority of cigarette permit no. 488, issued by the City of Cedar Rapids to Nash Finch for store # 465.

On April 8, 1999, an employee of store # 465 was cited for violating section 453A.2(1) by selling cigarettes to a minor. *See* Iowa Code § 453A.2(1) ("A person shall not sell, give, or otherwise supply any tobacco, tobacco products, or cigarettes to any person under eighteen years of age."). After the employee was found guilty, the city imposed a civil penalty of $300 on Nash Finch, pursuant to Iowa Code section 453A.22. *See id.* § 453A.22(2)(*a*) (providing for the imposition of a $300 civil penalty for a first violation of section 453A.2 by a retailer or its employee).

On June 27, 2000, store # 465 closed. The remaining inventory and equipment from this store were either auctioned off or dispersed among other stores. The following day, June 28, 2000, Nash Finch opened a new Econofoods store approximately 1200 feet northwest of the old store, at 2100 Edgewood Road S.W. This store was designated as Econofoods # 475. It did not share any common walls or parking areas with the old store. In addition, the stores' finances were separate, with each maintaining its own accounting ledgers and payrolls. Although the entire contents of store # 475 were new, ninety percent of the employees from the old store, including all of the management personnel, transferred to the new store.

As noted earlier, store # 465 had a city permit to sell cigarettes. This permit had been issued for the period from July 1, 1999, through June 30, 2000. *See id.* § 453A.13(3) (requiring that all permits issued to a retailer "expire on June 30 of each year"). Prior to the opening of the new store, a paralegal at Nash Finch's corporate headquarters prepared an application for a cigarette permit for store # 475 commencing on July 1, 2000, the anticipated opening date for the new store. Later, the company decided to open store # 475 three days early, but learned the city council would not be able to approve the permit by the earlier date. The city clerk offered to "transfer" the cigarette permit from store # 465 to store # 475 for the three-day period between the new opening date and July 1, 2000. Consequently, store # 475 was allowed to sell cigarettes from June 28, 2000, through June 30, 2000, under the authority of permit no. 488. Thereafter, it sold cigarettes under new permits issued every July 1.

On January 9, 2001, an employee of store # 475 was cited by the police for selling cigarettes to a minor in violation of section 453A.2(1). She later pled guilty. On August 1, 2001, the city council, finding Nash Finch had been convicted "on two occasions for selling cigarettes to persons under 18 years of age," suspended its cigarette permit for store # 475 for thirty days. *See id.* § 453A.22(2)(*b*) (providing for a thirty-day suspension of a retailer's permit if the retailer or an employee of the retailer has violated section 453A.2 for the second time within a two-year period). Nash Finch opposed the suspension, arguing the first violation did not occur at the same store as the second violation. The council rejected this argument, noting (1)

store # 475 opened the very next day after store # 465 closed; (2) both stores had the same management and primarily the same market; (3) the workforce from store # 465 and its liquor license were transferred to store # 475; and (4) Nash Finch operated no other Econofoods stores on the southwest side of Cedar Rapids. Based on these facts, the council concluded the violation at store # 475 was a second violation for purposes of section 453A.22 and warranted a thirty-day suspension.

Nash Finch filed a petition for writ of certiorari, resulting in a trial before the district court. Focusing on the physical and financial separateness of the two stores, Nash Finch contended store # 465 and store # 475 were not the same "place of business" as that term is defined by Iowa Code section 453A.1(19). Consequently, it claimed, the violation at store # 465 could not be aggregated with the violation at store # 475. Nash Finch argued that in the absence of aggregation, there was not substantial evidence to find a second violation had occurred at store # 475. Therefore, it asserted, the council acted illegally in suspending the cigarette permit for store # 475.

Acknowledging that the legislature may not have intended to aggregate violations occurring at two separate places of business operated simultaneously by the same entity, the district court believed the facts of this case were different. The court concluded from the evidence that store # 475 replaced store # 465 and therefore they were the same "place of business" within the meaning of chapter 453A. The trial court ruled there was substantial evidence to support the council's suspension of Nash Finch's cigarette permit for store # 475 and, accordingly, dismissed the writ of certiorari.

Nash Finch has appealed the district court's decision. This court stayed the suspension pending resolution of this appeal.

## II. Scope of Review.

■ Iowa Rule of Civil Procedure 1.1401 provides that "[a] writ of certiorari shall only be granted ... where an inferior tribunal, board or officer, exercising judicial functions, is alleged to have exceeded proper jurisdiction or otherwise acted illegally." Iowa R. Civ. P. 1.1401. "A city exercising a governmental function is a tribunal within the meaning of [this] rule." *Sergeant Bluff–Luton Sch. Dist. v. City Council*, 605 N.W.2d 294, 297 (Iowa 2000).

■ We recently set forth the principles governing our review of such cases:

> Our review of a district court ruling is at law. "An illegality is established if the board has not acted in accordance with a statute; if its decision was not supported by substantial evidence; or if its actions were unreasonable, arbitrary, or capricious." We are bound by findings of the trial court if they are supported by substantial evidence in the record. Evidence is substantial when "a reasonable mind would accept it as adequate to reach a conclusion."

*Perkins v. Bd. of Supervisors*, 636 N.W.2d 58, 64 (Iowa 2001) (citations omitted). "The plaintiff bears the burden to prove the illegality." *City of Grimes v. Polk County Bd. of Supervisors*, 495 N.W.2d 751, 752 (Iowa 1993).

## III. Statutory Provisions.

Because the issue in this case is one of statutory interpretation, we start with the relevant portions of the applicable statute. Under Iowa law a "retailer" desiring to sell cigarettes must obtain a permit. *See* Iowa Code § 453A.13(1). Although the department of revenue and finance issues "state permits to distributors, wholesalers, and cigarette vendors [persons selling cig-

arettes in vending machines]," cities may issue permits to retailers within their city limits. *Id.* § 453A.13(2)(*a*). A "retailer" is defined broadly to include "every person in this state who shall sell, distribute, or offer for sale or consumption or possess for the purpose of sale or consumption, cigarettes." *Id.* § 453A.1(21).

A permit must be obtained "for each place of business owned or operated" by a retailer. *Id.* § 453A.13(7). The permit must "describe clearly the place of business for which it is issued." *Id.* § 453A.13(9). The statute defines the term "place of business," in relevant part, as

> any place where cigarettes are sold or where cigarettes are stored within or without the state of Iowa by the holder of an Iowa permit or kept for the purpose of sale or consumption. . . .

*Id.* § 453A.1(19).

Permits are "nonassignable." *Id.* § 453A.13(9). Nonetheless, they may be "exchanged." *See* Iowa Admin. Code r. 701—82.2(3).[1] Rule 701—82.2(3) states:

> If a permitee changes the location of an operation requiring a permit but remains within the jurisdiction of the same entity which granted the original permit, the permitee may exchange the invalid permit (valid only for the location described in the permit) for a valid permit free of charge, without the partial payment-partial refund process.

*Id.*

Chapter 453A prohibits the sale of cigarettes to persons under the age of eighteen. *See* Iowa Code § 453A.2(1). The statute provides progressive penalties for multiple violations of this prohibition, in-

cluding suspension and ultimately revocation of the retailer's permit. *See id.* § 453A.22(2). It does not, however, expressly state when a violation should be considered a "second," "third," or "fourth" violation by the particular retailer. *E.g., id.* § 453A.22(2)(*b*) ("For a second violation within a period of two years, the retailer's permit shall be suspended for a period of thirty days."). The statute does provide, nonetheless, that suspensions and revocations are applicable only "to the *place of business* at which the violation occurred." *Id.* § 453A.22(4) (emphasis added).

■■■ In interpreting and applying these statutory provisions, we "attempt to give effect to the general assembly's intent in enacting the law. Generally, this intent is gleaned from the language of the statute." *Griffin Pipe Prods. Co. v. Guarino,* 663 N.W.2d 862, 864 (Iowa 2003) (citations omitted). We give words their ordinary meaning, keeping in mind the context of the provision at issue. *Id.; William C. Mitchell, Ltd. v. Brown,* 576 N.W.2d 342, 347 (Iowa 1998). In addition, we strive to interpret each provision of a statute "in a manner consistent with the statute as an integrated whole." *Griffin Pipe Prods. Co.,* 663 N.W.2d at 864.

### IV. *Discussion.*

■■■ Nash Finch argues that because the statutory scheme contemplates that each "place of business" must have its own permit, the council and district court erred in concluding a violation occurring under the permit issued to store #475 could be aggregated with a violation occurring under a different permit issued to a different store. Initially, we reject any suggestion

---

1. The legislature has given the director of the department of revenue and finance authority to adopt rules for the administration of chapter 453A. *See* Iowa Code § 453A.25(2). *See*

*generally id.* § 453A.56 (providing for uniform and equitable implementation of the statute throughout the state).

that only violations happening while the same permit is in effect can be aggregated. Violations must logically be aggregated by place of business, not by a particular permit. We reach this conclusion because the statute specifically provides for aggregation of violations occurring within two years, yet permits are only issued for one year. *See* Iowa Code §§ 453A.13(3), 453A.13.22(2)(*b* ). *See generally Am. Legion v. Cedar Rapids Bd. of Review,* 646 N.W.2d 433, 439 (Iowa 2002) ("We will not interpret a statute so as to render a part of it superfluous."); *State v. Jennie Coulter Day Nursery,* 218 N.W.2d 579, 582 (Iowa 1974) ("[T]he legislature will be presumed to have inserted every part in a statute for a purpose and to have intended that every part shall be carried into effect."). It follows, then, that aggregated violations can occur during the terms of different permits covering the same place of business. Thus, the determinative question is whether store # 475 was the same "place of business" as store # 465.

The statutory definition of "place of business" is of little assistance in answering this question because it does not elaborate on the term from a geographical or business continuation perspective. The statute merely provides that a "place of business" is "*any place* where cigarettes are sold ... by the holder of an Iowa permit." Iowa Code § 453A.1(19) (emphasis added). Although the word "place" has many definitions, it is our judgment the one that fits best in this context is "a building or locality used for a special purpose." *Webster's Third New International Dictionary* 1727 (unabr. ed.2002). While the word "any" also has many mean-

ings, in this context, we think it more likely means "one, no matter what one: EV-ERY." *Id.* at 97. We interpret Nash Finch's argument to rest on the premise that "place" means a precise "building" or address. But under the common meaning of the terms, "any place" might also mean wherever the business is conducted. *Cf. State v. Cahalan,* 204 Iowa 410, 412–13, 214 N.W. 612, 613 (1927) (holding "place," as used in statute defining liquor nuisance, was not limited to a particular building but included entire area where illicit liquor business was conducted).

Because neither interpretation is unreasonable, we think the statute is ambiguous. *See State v. Albrecht,* 657 N.W.2d 474, 479 (Iowa 2003) ("A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute." (Citations omitted.)). When a statute is ambiguous, the court may consider, among other factors, the purpose of the statute, the consequences of a particular construction, and any administrative interpretation of the statute. *See* Iowa Code § 4.6; *State v. Sailer,* 587 N.W.2d 756, 760 (Iowa 1998).

We turn first to the department's rule, which reflects its view of the statutory scheme implemented in chapter 453A. *See Mortimer v. Fruehauf Corp.,* 502 N.W.2d 12, 14 (Iowa 1993) (noting court gives "deference to an interpretation by the responsible administrative agency").[2] Under rule 701—82.2(3), the department allows a permit to be transferred when "the location of [the] operation" changes. Thus, when the business operation is simply moved to another location, the permit can be exchanged for one covering the new location

---

**2.** We do not apply the rules set forth in Iowa Code section 17A.19(11) concerning the deference to be accorded "to the view of the agency with respect to particular matters," as the Administrative Procedure Act does not govern the present certiorari action. *See* Iowa Code

§§ 17A.2 (stating that "a political subdivision of the state" is not an "agency" within the ambit of chapter 17A); .19(11) (stating deference rules are used by court "[i]n making the determinations required" for judicial review of agency action).

without the necessity of applying for a new permit and obtaining approval for its issuance. (It appears that is what the city clerk intended to do here.) This agency interpretation implies that the focus of the regulatory scheme is the business or operation of the specific retailer because once the retailer is issued a permit, it can automatically be transferred to a new location. Consistent with this focus, it appears the element of primary importance in the phrase, "place of business," is the business operation itself, and not the physical location.

This focus is consistent with the purpose of the statute. A review of chapter 453A reveals a legislative intent to regulate the sale of cigarettes by retailers in the state, and more specifically to discourage the sale of cigarettes to minors. This legislative purpose is best furthered by holding a retailer responsible for multiple violations of the statute arising out of the same operation, even when that operation has moved to a new location. There is simply nothing in the statute to indicate a retailer should gain a fresh start, free from the burdens of prior violations, simply by relocating. Certainly such an interpretation of the statute would be contrary to the legislative goal of deterring violations by the same retailer through the application of progressive penalties for multiple violations.

Based upon our consideration of the entire statute, its implementing rules, and its purpose, we conclude the mere relocation of a business does not automatically produce a new "place of business" for pur-

poses of aggregating violations. Accordingly, in the present case, aggregation is not precluded simply because the first violation occurred at a different physical location than the second violation. The determinative question is whether store # 475 is the same "operation" as store # 465. *See* Iowa Admin. Code r. 701—82.2(3) (permitting transfer of permit when "location of an operation" changes). Thus, we reject Nash Finch's contention that the council and district court erroneously interpreted the statute when they focused on whether store # 475 was a replacement for the business formerly operated as store # 465.

The remaining question, then, is whether the district court correctly concluded there was substantial evidence to support the council's implicit finding that store # 475 was the same operation as store # 465, or, under the terminology used by the district court, whether store # 475 replaced store # 465. We think there is substantial evidence in support of this finding. Store # 475 opened immediately upon the closing of store # 465; they never operated simultaneously. The stores were located on the same street, only 1200 feet apart, and served the same market. Although inventory and equipment were not transferred from one location to the other, common sense suggests the purchase of new equipment and inventory was necessary to ensure that the new store would be operational immediately upon the closing of the old store. More importantly, the personnel from store # 465 transferred, with few exceptions, to the new location.[3] While store # 475 had some

---

3. Nash Finch challenges a finding by the city council that the management at the two locations was the same at the time of the violations. While the record shows the stores had the same manager when the two violations occurred, the assistant managers were different. We do not find the council's unsupport-

ed generalization to be important, however. As our discussion makes plain, the significant fact is that all of the management personnel from store # 465 transferred to store # 475, a fact that supports the council's ultimate conclusion that store # 475 was a continuation of

employees working prior to the closing of store # 465, these employees were apparently readying the store for operation, as store # 475 was not open for business until store # 465 closed. In addition, the record shows the old store's cigarette permit and liquor license were transferred to the new store.[4] Finally, Nash Finch's own company witness testified that store # 475 "was a replacement store."

We think these facts provide ample support for the council's conclusion that store # 475 was a mere continuation of the operation formerly conducted by Nash Finch at store # 465. Therefore, the violations that occurred at each store occurred at the same "place of business." Consequently, the council correctly aggregated the violations occurring at the two locations for purposes of determining the appropriate penalty for the second violation.

### V. *Disposition.*

In conclusion, we find no error in the district court's ruling that the city council did not act illegally in suspending the cigarette permit for store # 475 for thirty days. Therefore, we affirm. The stay previously entered by this court shall expire upon issuance of procedendo.

**AFFIRMED.**

All justices concur except WIGGINS, J., who takes no part.

the operation formerly conducted at store # 465.

4. Although Nash Finch complains that the city clerk had no authority to "transfer" store # 465's cigarette permit to the new store, we conclude the clerk's action was consistent with the spirit, if not the literal terms, of rule 701—82.2(3) providing for the exchange of a permit upon relocation of a business.