# IN THE COURT OF APPEALS OF IOWA

No. 17-1149
Filed October 10, 2018

**AMES 2304, LLC,**
    Plaintiff-Appellant,

**vs.**

**CITY OF AMES, ZONING BOARD OF ADJUSTMENT,**
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Story County, Michael J. Moon, Judge.

Ames 2304, LLC appeals the district court order annulling its writ of certiorari. **REVERSED AND REMANDED.**

Debra Hulett of Nyemaster Goode, P.C., Des Moines, for appellant.

Eric M. Updegraff, Brent L. Hinders, and Hugh J. Cain of Hopkins & Huebner, P.C., Des Moines, for appellee.

Heard by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

The Ames Zoning Board of Adjustment (Board) denied an application by Ames 2304, LLC for a permit to remodel the interior of its apartment building that would increase the number of bedrooms in the building but not the number of dwelling units. The Board denied the application, determining the proposed remodel was prohibited under the zoning ordinance because the project would increase the intensity of a nonconforming use. It reasoned that the addition of bedrooms and concomitant addition of required off-street parking would intensify the nonconforming use. Ames 2304 petitioned the district court for a writ of certiorari. The district court annulled the writ, and Ames 2304 appeals.

On appeal, Ames 2304 alleges the Board acted illegally in denying its application for a permit. In the context of the facts presented, we interpret the ordinance to tie "increase in intensity" to an increase in number of dwelling units, and not to an increase in number of bedrooms, occupants, or required off-street parking. We conclude that because the proposed remodeling project does not increase the number of dwelling units, it does not violate the ordinance's prohibition against increases in intensity of a nonconforming use. The Board's interpretation of the ordinance on this issue is erroneous and denial of the permit on that basis illegal. We therefore reverse the judgment of the district court. We remand to the district court for an order sustaining the writ of certiorari.

**I. Background Facts and Proceedings.**

Ames 2304 owns the property at 2304 Knapp Street in Ames. The property is currently zoned as "Low Density Residential," which only permits one single-family residential dwelling per lot. The structure standing on the lot was built in

1910 as a single-family structure. It was converted into an apartment building consisting of four one-bedroom apartments in 1928. Because the property was converted before the current zoning ordinance went into effect, it is allowed to continue as a legal nonconforming use.

In 2016, Ames 2304 applied for a permit to remodel the property's interior. The remodel would change the four one-bedroom units into two studio units, one two-bedroom unit, and one three-bedroom unit. A zoning enforcement officer denied the permit after determining that the increase in the number of bedrooms to the building and increase in required off-street parking would increase the intensity of the nonconforming use, which the officer concluded was not permitted under the zoning ordinance. Ames 2304 appealed the decision to the Board. After a hearing, the Board affirmed the decision of the zoning enforcement officer.

Ames 2304 filed an action for writ of certiorari in district court. The district court determined the Board correctly interpreted the zoning ordinance section pertaining to nonconforming uses, correctly determined that the increase in number of bedrooms constituted an increase in the intensity of the nonconformance, and correctly interpreted the provisions of the parking space ordinance as evidencing an increase in intensity of the nonconforming use. The court annulled the writ, and Ames 2304 appeals.

**II. Scope of Review.**

We review the district court's judgment in a certiorari action for correction of errors at law. *See State v. Iowa Dist. Ct. ex rel. Story Cty.*, 843 N.W.2d 76, 79-80 (Iowa 2014). We are bound by the findings of the trial court if supported by substantial evidence in the record. *See* Iowa R. App. P. 6.907; *Nash Finch Co. v.*

*City Council of City of Cedar Rapids*, 672 N.W.2d 822, 825 (Iowa 2003). However, we are not bound by erroneous legal rulings that materially affect the court's decision. *See Chrischilles v. Arnolds Park Zoning Bd. of Adjustment*, 505 N.W.2d 491, 493 (Iowa 1993).

### III. Discussion.

A certiorari action is a procedure to test whether an inferior board, tribunal, or court exceeded proper jurisdiction or otherwise acted illegally. *See* Iowa R. Civ. P. 1.1401. An illegality exists when an inferior tribunal has failed to apply the law properly or when its factual findings are not supported by substantial evidence. *See Denison Mun. Utils. v. Iowa Workers' Comp. Comm'r*, 857 N.W.2d 230, 234 (Iowa 2014). Ames 2304 bears the burden of proving the illegality. *See City of Grimes v. Polk Cty. Bd. of Supervisors*, 495 N.W.2d 751, 752 (Iowa 1993).

The question before the Board and the district court involved an interpretation of the zoning ordinance. "Although we give deference to the board of adjustment's interpretation of its city's zoning ordinances, final construction and interpretation of zoning ordinances is a question of law for us to decide." *Lauridsen v. City of Okoboji Bd. of Adjustment*, 554 N.W.2d 541, 543 (Iowa 1996).

Ames 2304 contends the Board acted illegally in denying it a permit for its proposed remodeling plan by incorrectly applying the zoning ordinance's prohibition against intensification of nonconforming uses. It also contends substantial evidence does not support the Board's finding that the plan would increase the intensity of the nonconforming use.

### A. Ordinance.

The property in question is a nonconforming use.

> A nonconforming use is one "that lawfully existed prior to the time a zoning ordinance was enacted or changed, and continues after the enactment of the ordinance even though the use fails to comply with the restrictions of the ordinance." *City of Okoboji v. Okoboji Barz, Inc.*, 746 N.W.2d 56, 60 (Iowa 2008). This lawfully existing prior use of the property creates a vested right in the continuation of the nonconforming use once the ordinance takes effect unless the nonconforming use is legally abandoned, enlarged, or extended. *Id.*

*City of Des Moines v. Ogden*, 909 N.W.2d 417, 423-24 (Iowa 2018). At issue is Ames Municipal Ordinance section 29.307(2), the ordinance addressing nonconforming uses. It states in part:

> (2) **Nonconforming Uses.**
> Any use of any structure or lot that was conforming or validly nonconforming and otherwise lawful at the enactment date of this ordinance and is nonconforming under the provisions of this Ordinance or that shall be made nonconforming by a subsequent amendment, may be continued so long as it remains otherwise lawful, subject to the standards and limitations of this Section.
> (a) Movement, Alteration and Enlargement.
> (i) Enlargement.
> a. A nonconforming use may not be increased in intensity and may not be enlarged, expanded or extended to occupy parts of another structure or portions of a lot that it did not occupy on the effective date of this Ordinance, unless the enlargement, expansion or extension complies with all requirements for the zone, does not create an additional nonconformity, and is approved for a Special Use Permit, . . . except as described in subsection b. following.
> b. Any building or structure containing a nonconforming use may be enlarged up to 125% of the floor area existing on the effective date of this ordinance, provided that the expanded building structure complies with all density, coverage and spatial requirements of the zone in which it is located.
> c. The enlargement of a nonconforming use that has the effect of making a structure nonconforming, other than as described in subsection b. above, shall not be specially permitted . . . , but rather shall be construed as a request for a variance . . . .

(ii) Exterior or Interior Remodeling or Improvements to Structure.

Exterior or interior remodeling or improvements to a structure containing a nonconforming use shall be permitted, provided that any proposed enlargement, expansion or extension shall be subject to the provisions set forth in the above paragraph.

Ames, Iowa Mun. Code § 29.307.

The Board determined that the paragraph (ii) incorporates paragraph (i) by reference:

the reference in Section 29.307(2)(a)(ii) to the preceding paragraph, 29.307(2)(a)(i), was intended to incorporate subsection (i)'s prohibition on increases in intensity in structures that are a nonconforming use regarding remodeling of the structure. Therefore, the ordinance does not allow increases in intensity for nonconforming structures undergoing internal remodeling. This is in line with the general purpose of the "Nonconformities" section of the ordinance, expressed in Section 29.307(1).

In applying to the district court for a writ of certiorari, Ames 2304 argued that the "increase in intensity" term in paragraph (i) only applies to remodels that enlarge, expand, or extend a nonconforming structure, and that the language of paragraph (ii) requires the Board to approve any interior remodel that does not enlarge, expand, or extend a structure. The district court found that the Board correctly interpreted the ordinance as prohibiting an increase in the intensity of a nonconforming use through an interior remodeling project, noting, "[a]n interpretation of the term 'increase in intensity' in the Ames ordinance cannot ignore the practical effect of increasing the number of occupants." The court also found that the Board correctly determined that an increase from four to seven bedrooms constitutes an increase in intensity of the nonconformance. Finally, the court further found that the Board correctly concluded the additional parking

required because of the increase in bedrooms evidenced an increase in intensity of the nonconforming use.

### B. Principles of statutory construction.

In interpreting an ordinance, we do not search for meaning beyond its express terms if the ordinance is plain and its meaning is clear. *See Baker v. Bd. of Adjustment*, 671 N.W.2d 405, 416 (Iowa 2003). Because reasonable persons can disagree as to whether the requirements of section 29.307(2)(i) apply to interior remodels of nonconforming structures, the ordinance is ambiguous.[1] *See City of Okoboji v. Okoboji Barz, Inc.*, 717 N.W.2d 310, 314 (Iowa 2006) (stating ambiguity exists if reasonable persons can disagree on the meaning of a provision and may arise from either the meaning of particular words or the general scope and meaning of the ordinance in its totality). Therefore, we must apply the general rules of statutory construction. *See id.*

"The goal of statutory construction is to determine legislative intent." *Id.* In doing so, we look at the words used in the ordinance rather than what the ordinance should or might have said. *See id.* Unless the ordinance defines a term or it has an established meaning in the law, we give the words in the ordinance their ordinary and common meaning by considering the context within which they are used. *See id.* We consider the ordinance in its entirety in order to discern its natural and intended meaning. *See id.* We avoid construing statutory provisions in a manner that will lead to absurd results. *See Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 251 (Iowa 2018). Furthermore, zoning restrictions are construed

---

[1] In the understatement of the day, the City acknowledged at oral argument the ordinance was ambiguous.

strictly to favor the free use of property and will not be extended by implication or interpretation. *Ernst v. Johnson Cty.,* 522 N.W.2d 599, 602 (Iowa 1994).

### C. Error preservation.

On appeal, Ames 2304 makes two arguments in support of its claim that the Board misapplied the law in denying its permit for an interior remodel. First, it reiterates the argument it made before the district court—that the provisions of paragraph (i) only apply to interior remodels that enlarge, expand or extend the size of the nonconforming structure and, because its remodel plan does not change the structure's size, it was error to apply the "increase in intensity" prohibition found in paragraph (i). Second, Ames 2304 cites the municipal code definition of "intensity" to argue the "increase in intensity" prohibition does not apply to its proposed remodel of a residential building.[2]

The City of Ames concedes that Ames 2304 preserved error on the specific argument it made below—that the "increase in intensity" prohibition set forth in paragraph (i) does not apply to proposed remodels that do not increase the size of the structure. However, it argues Ames 2304 failed to preserve error on its argument that the "increase in intensity" prohibition does not apply to any property used for residential purposes under the definition of "intensity" set forth in the ordinance because Ames 2304 never presented the argument to the district court.

---

[2] The municipal code defines "intensity" as "the degree or level of concentration to which land is used for commercial, industrial or any other nonresidential purpose." Ames, Iowa Mun. Code § 29.201(109). Even if found to be applicable to residential uses, this definition provides no guidance as to how it is to be applied here. Is "degree or level of concentration" tied to number of dwelling units, bedrooms, occupants, required parking spaces, or some other factor? Who knows?

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002); *accord Vincent v. Four M Paper Corp.*, 589 N.W.2d 55, 64 (Iowa 1999) ("We will not address an argument which the district court did not have an opportunity to consider."). The purpose of our error-preservation rule is to give "opposing counsel notice and an opportunity to be heard on the issue and a chance to take proper corrective measures or pursue alternatives in the event of an adverse ruling." *Lee v. State*, 815 N.W.2d 731, 739 (Iowa 2012) (citation omitted).

> Based upon considerations of fairness, this court is not ordinarily a clearinghouse for claims which were not raised in the district court. It is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. Furthermore, it is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable.

*Bill Grunder's Sons Constr., Inc. v. Ganzer*, 686 N.W.2d 193, 197 (Iowa 2004) (cleaned up).[3]

Ames 2304 claims it preserved error because its general argument—that the Board incorrectly interpreted the provisions of paragraph (i) as applying to the remodel because it increased the intensity of the nonconforming use—was raised and decided below and is being reasserted on appeal. In its view, the two arguments it presents on appeal in support of the issue—that the "increase in

---

[3] Cleaned up" is a relatively new parenthetical used to indicate that internal quotation marks, alterations, and citations have been omitted from quotations for readability purposes. *See United States v. Steward*, 880 F.3d 983, 986 n.3 (8th Cir. 2018); Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (Fall 2017).

intensity" test is inapplicable because (1) its remodel does not propose to enlarge, expand, or extend the nonconforming structure and (2) the definition of "intensity" cannot be applied to apartment buildings—are merely different theories in support of its claim. It argues our error-preservation rules do not preclude a party from presenting a new theory in support of its claim on appeal. In other words, Ames 2304 contends that making *any* argument below in support of the general position that the Board incorrectly applied the "increase in intensity" prohibition preserved for appeal *all* conceivable arguments in support of the proposition, regardless of whether it made the argument below.

There is support for this proposition. For instance, a party need not cite a specific statute or rule in support of an issue in order to cite that statute or rule on appeal. *State v. Christensen*, 792 N.W.2d 685 (Iowa 2010); *accord Schneider v. State*, 789 N.W.2d 138, 147 (Iowa 2010) (holding the plaintiffs' failure "to cite the specific statute or rule in support of an issue at the district court level is not dispositive of whether the issue has been preserved for appeal"; although the plaintiffs failed to cite the applicable state law cited on appeal, it cited the corollary federal regulation and district court's ruling implicitly rejected the claim, thus preserving error on its claim regarding the state statute). Rather, the preservation question turns on whether "the nature of the error has been timely brought to the attention of the district court." *Summy v. City of Des Moines*, 708 N.W.2d 333, 338 (Iowa 2006), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016) (acknowledging that, although it would be helpful for a party to provide the district court with the same authorities raised on appeal, "[e]rror preservation does not turn . . . on the thoroughness of counsel's research and

briefing"); *see also Bartlett Grain Co., LP v. Sheeder*, 829 N.W.2d 18, 24 n.4 (Iowa 2013) (finding error preserved, even though parties did not cite to specific UCC provision because appellant alerted the court of its "essential claim"); *Collister v. City of Council Bluffs*, 534 N.W.2d 453, 454–55 (Iowa 1995) (holding that the city preserved error on a statutory immunity argument by claiming at trial, without citing the statute, that there was no duty to warn the plaintiffs).

In *JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887, 893 (Iowa 2016), the appellant failed to argue before the agency that Iowa Code section 85.34(3)(b) prohibits simultaneous receipt of permanent partial and permanent total disability payments. However, "the issue of whether section 84.34 taken as a whole authorizes concurrent awards of permanent partial disability and permanent total disability benefits was certainly briefed by both sides and raised before the agency." *JBS Swift & Co.*, 888 N.W.2d at 893. The supreme court characterized the appellant's cite to section 85.34(3)(b) for the first time on appeal as "additional ammunition for the same argument . . . made below—not a new argument advanced on appeal." *Id.*[4]

We choose to address both of Ames 2304's increase-in-intensity arguments.

---

[4] A number of states provide an exception to the error-preservation rule when a party raises a new theory of statutory interpretation on appeal. *See, e.g.*, *Bleecker St. Mgmt. Co. v. New York State Div. of Hous. & Cmty. Renewal*, 727 N.Y.S.2d 76, 77 (N.Y. App. Div. 2001) (considering claim involving "solely a question of statutory interpretation" raised for the first time on appeal); *Bennett v. Hardy*, 784 P.2d 1258, 1260 (Wash. 1990) ("[A] statute not addressed below but pertinent to the substantive issues which were raised below may be considered for the first time on appeal.").

**D. Analysis.**

We address Ames 2304's argument made to the district court—that the provisions of section 29.307(2)(a)(i) only apply to interior remodels that enlarge, expand or extend the size of the nonconforming structure, and, because its remodel plan does not change the structure's size, it was error to apply the "increase in intensity" prohibition found in paragraph (i). The "Enlargement" paragraph states in relevant part: "A nonconforming use may not be increased in intensity and may not be enlarged, expanded, or extended to occupy parts of another structure or portions of a lot that it did not occupy." Ames, Iowa Mun. Code § 29.307(2)(a)(i)(a). It is not disputed that the proposed remodel is not an enlargement, expansion, or extension. It follows, as Ames 2304 argues, that it is entitled to a permit for the interior remodel because the ordinance provides: "Exterior or interior remodeling or improvements to a structure containing a nonconforming use *shall* be permitted, provided that any proposed enlargement, expansion or extension shall be subject to the provisions set forth in the above paragraph." *Id.* § 29.307(2)(a)(ii) (emphasis added). The argument is attractive at first blush, particularly in view of the ordinance's ambiguity. But, we must consider the ordinance in its entirety, not just isolated words or phrases, in order to discern its natural and intended meaning. *See Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 251 (Iowa 2018); *City of Okoboji,* 717 N.W.2d at, 314*.*

In addressing the argument made by Ames 2304, the district court determined that the "increase in intensity" term set forth in section 29.307(2)(a)(i) applies equally to interior remodels that do not enlarge the nonconforming structure and those that do enlarge the nonconforming use, reasoning:

It would be incongruent to assert that paragraph (ii) denied the City discretion to prohibit the remodeling in light of the overarching responsibilities set out in (1)(a). [Ames 2304]'s argument would allow remodeling that would increase the intensity of the nonconformance without any oversight by the City of Ames. [Ames 2304]'s initial position is that it could remodel the existing structure to add 50 occupants and the [Board] could not prevent such a remodeling as long as the building's interior dimensions did not change.

The ordinance concerning nonconforming uses states the following as its purpose:

It is the general policy of the City to allow uses, structures and lots that came into existence legally, in conformance with then-applicable requirements, to continue to exist and be put to productive use, but to mitigate adverse impact on conforming uses in the vicinity. This Section establishes regulations governing uses, structures and lots that were lawfully established but that do not conform to one or more existing requirements of this Ordinance. The regulations of this Section are intended to:
(i) Recognize the interests of property owners in continuing to use their property;
(ii) Promote reuse and rehabilitation of existing buildings; and
(iii) Place reasonable limits on the expansion of nonconformities that have the potential to adversely affect surrounding properties and the community as a whole.

*Id.* § 29.307(1)(a). The purpose set forth in section 29.307(1)(a)(iii)—limiting the expansion of nonconforming uses, structures, and lots that have the potential to adversely affect the area and community—aligns with a prohibition of increases in intensity in the context of nonconforming residential uses. Therefore, we agree with the district court that remodeling of a nonconforming use, residential or not, is subject to the application of the section 29.307(2)(a) prohibition against increasing the intensity of the nonconforming use.

We move on to the argument Ames 2304 did not make to the district court: that the "increase in intensity" prohibition does not apply to its remodel based on the definition of "intensity" set forth in the ordinance. Article 2 of the Ames

Municipal Code pertains to rules of construction and definitions. *See* Ames, Iowa Mun. Code §§ 29.200-29.201. Specifically, it supplies definitions for various ordinance terms. *See id.* § 29.201. It defines intensity to mean "the degree or level of concentration to which land is used for commercial, industrial or any other nonresidential purpose." *See id.* § 29.201(109). Apartment buildings are classified as residential use.[5] *See id.* § 29.501(4), tbl. 29.501(4)-1. Because the "intensity" definition concerns only nonresidential purposes, Ames 2304 argues the Board acted illegally in denying its request for a permit for interior remodel of its apartment building—a residential use. The argument is not without merit. The ordinance's "intensity" definition specifically applies to "commercial, industrial, and other *nonresidential* purpose[s]." *See id.* § 29.201(109) (emphasis added). Residential uses are not mentioned. "[L]egislative intent is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned." *Homan v. Branstad*, 887 N.W.2d 153, 166 (Iowa 2016) (quoting *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995). It would thus appear that the section 29.201(109) definition of "intensity," is not applicable to nonconforming use residential remodels. But that does not end the matter.

Having decided the ordinance's prohibition against increases in intensity of nonconforming uses is applicable to the proposed remodel, and that the section 29.201(109) "intensity" definition is not applicable to residential uses, we must look for a definition elsewhere. The logical place is to first look at other provisions of

---

[5] Apartment dwellings containing twelve or less units belong in Residential Medium Density (RM) zones. *See* Ames, Iowa Mun. Code § 29.702, tbl. 29.702(2). "Apartment dwelling means a dwelling containing three or more residential units." *Id.* § 29.201(14).

ordinance. We found only one instance where "intensity" is tied to residential uses. Section 29.307(3)(c), concerning restoration of damaged nonconforming structures, provides that any nonconforming structure damaged by natural disaster to the extent of 70% of its assessed value may be rebuilt "provided such rebuilding does not increase the intensity of use, as determined by the number of dwelling units (for residences)." Although "intensity," as applied to residential uses in the context of the general purposes of the nonconformities section of the ordinance, could well be tied to the number of bedrooms, number of occupants, number of required off-street parking spaces, or other factors, the ordinance does not do so. Instead, at least in the one instance we could find, the ordinance ties "intensity" to just the number of dwelling units. We therefore conclude the section 29.307(2)(a) prohibition of increases in intensity, as applied to residential uses, is tied only to an increase in the number of dwelling units. If it was intended that increase in intensity be tied to other factors, such as increase in number of bedrooms, increase in number of occupants, or increase in number of required off-street parking spaces, the ordinance could well have been so drafted.

The proposed remodel does not increase the number of dwelling units. Under our interpretation of the ordinance, the proposed remodel does not violate the ordinance's prohibition against an increase in intensity of the nonconforming use. The Board erroneously concluded otherwise. It follows that substantial evidence does not support the Board's findings and the Board acted illegally in denying the permit on the basis the proposed remodel would increase the intensity of the nonconforming use.

**IV. Conclusion.**

The Board correctly determined the ordinance concerning nonconforming uses prohibits it from approving a permit for an interior remodel that increases the intensity of the nonconforming use.  But, in relying on its erroneous interpretation of section 29.307(2)(a), the Board acted illegally in denying Ames 2304 a permit for its proposed interior remodel.  We therefore reverse the judgment of the district court.  We remand to the district court for entry of an order sustaining the writ of certiorari.

**REVERSED AND REMANDED.**