# IN THE COURT OF APPEALS OF IOWA

No. 19-1688
Filed November 4, 2020

**DAVID C. STUART and JADE ENGINEERING, L.L.C.,**
Plaintiffs-Appellants,

**vs.**

**CITY OF DUBUQUE ZONING BOARD OF ADJUSTMENT,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Alan T. Heavens,

Judge.

Plaintiffs appeal from the district court's order dismissing a petition for writ

of certiorari. **AFFIRMED.**

Stuart G. Hoover of Blair & Fitzsimmons, P.C., Dubuque, for appellants.

Maureen Quann, Assistant City Attorney, Dubuque, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

David Stuart and his company, Jade Engineering, L.L.C.,[1] own two historical duplexes in Dubuque. After inspecting those properties, a city zoning enforcement officer mailed Stuart a notice of violations for illegally storing materials. Stuart challenged that notice before the city's zoning board of adjustment and then petitioned for writ of certiorari in the district court. He was unsuccessful at each turn. Stuart now appeals, contending the court erred in dismissing his petition. Because Stuart has not proven the board's actions were unreasonable, we affirm.[2]

**I.       Facts and Prior Proceedings**

Stuart owns two properties on Bluff Street in Dubuque. As part of the Jackson Park National Register Historic District, these brick duplexes are located in a "high density, multi-family residential zoning district." But neither serves as a residence. Instead, Stuart stores shingles, tar paper, old furniture, antiques, and other miscellaneous material in the buildings.

Stuart received notice in February 2019 that his use of the buildings violated zoning rules: "The inspection revealed that the structure was being used for the storage of . . . miscellaneous material in Violation of City Code." The city ordered Stuart to remove all items stored within the property. Stuart appealed the notices to the City of Dubuque Zoning Board of Adjustment. Following a May 2019

---

[1] Stuart is the principal officer of Jade Engineering. We will refer to the plaintiffs-appellants collectively by his surname.

[2] This is not our court's first encounter with these parties. *See City of Dubuque v. Jade Eng'g, LLC*, No. 17-0056, 2018 WL 1858381, at *1 (Iowa Ct. App. Apr. 18, 2018) (upholding district court's decision that city failed to prove Jade Engineering abandoned those properties).

meeting, the board voted "3 to 2" to affirm the zoning enforcement officer's determinations of illegal property use. Stuart then petitioned for writ of certiorari in the district court, claiming the board acted illegally and beyond its authority by failing to "follow its own procedures in how to conduct a hearing." Stuart also complained the board made no "findings of fact or determinations of any issues presented." According to Stuart, because of the board's failures, the record lacked substantial evidence in support of its decision.

At a July 2019 hearing, the board offered as exhibits the minutes of the May board meeting and the two notices of the board's decision. Stuart offered the bylaws outlining the board's procedure for conducting public hearings. The court admitted those exhibits. Stuart also testified in favor of his petition. In its August 2019 order, the court dismissed the petition. The court found the board's procedures were "supported by competent and substantial evidence" and allowed for "notice and an opportunity to be heard."

Stuart moved to reconsider under Iowa Rule of Civil Procedure 1.904(2), alleging,

> [T]he court has misconstrued the required purpose of the July 24, 2019, hearing, failing to follow the Iowa Rules of Civil Procedure and ruling on the merits of the petition before ordering issue of the writ and obtaining the record of the hearing, a necessary step before the court can decide if the petition should be sustained or annulled.

The board resisted, insisting the hearing on Stuart's petition was "full and thorough" and no further record was needed.

The court denied the motion to reconsider. Responding to Stuart's critique, the court explained: "[T]o the extent" that the original ruling "went too far into the merits of the case" it was substituting a "truncated analysis of the sufficiency of

[Stuart's] petition." As part of that analysis, the court found for the first time that Stuart lacked standing to challenge the board's decision because the city could not impose a penalty unless Stuart violated the directive in the notice. As its bottom line, the court held that Stuart failed to "allege any facts that, even if proven to be true at a trial on the merits, would be sufficient to amount to an illegality under which a writ of certiorari could be sustained." Stuart appeals.

## II. Scope and Standards of Review

We review the district court's ruling for correction of errors at law. *See Burroughs v. City of Davenport Zoning Bd. of Adjustment*, 912 N.W.2d 473, 478 (Iowa 2018). As we undertake our analysis, we recall that "[a] board of adjustment's decision enjoys a strong presumption of validity." *See Ackman v. Bd. of Adjustment for Black Hawk Cnty.*, 596 N.W.2d 96, 106 (Iowa 1999) (explaining when "the reasonableness of the board's action is 'open to a fair difference of opinion, the court may not substitute its decision for that of the board'" (quoting *Cyclone Sand & Gravel Co. v. Zoning Bd. of Adjustment*, 351 N.W.2d 778, 783 (Iowa 1984))).

As for Stuart's due process claim, we review constitutional issues de novo. *See Harms v. City of Sibley*, 702 N.W.2d 91, 96 (Iowa 2005).

## III. Analysis

"Iowa Code section 414.15 governs certiorari actions seeking review of board of adjustment decisions." *Burroughs*, 912 N.W.2d at 479. Under that provision, a person aggrieved by any decision of the board may present the court a petition alleging the grounds of illegality. Iowa Code § 414.15 (2019). "These grounds of illegality track those that are raised in certiorari actions generally."

*Bontrager Auto Serv., Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 491 (Iowa 2008) (citing discussion of Iowa Rule of Civil Procedure 1.1401 in *Nash Finch Co. v. City Council*, 672 N.W.2d 822, 825 (Iowa 2003)).  After the aggrieved person files the petition for certiorari, "the board of adjustment must make a return to the writ, which includes the 'papers acted upon by it' and 'other facts as may be pertinent and material to show the grounds of the decision appealed from.'"  *Id.* at 490 (quoting Iowa Code § 414.17).[3]  If necessary, the district court may hold a de novo hearing on the alleged illegalities (which are not based on the board's fact-finding function).  *Id.* at 490–91 (citing Iowa Code § 414.18).

Stuart contends the district court "erred in determining that the petition did not allege facts sufficient to amount to an illegality."  Reprising his argument from the district court, Stuart now insists the board violated procedural due process.  He also asserts the board's failure to follow a city ordinance describing how to conduct hearings "constitutes an illegality."[4]

Before evaluating those two contentions, we pause to reflect on the court's choice of terminology.  True, the court's August order purported to "dismiss" the

---

[3] This step squares with the definition of certiorari.  The Latin term means "to be more fully informed."  Bryan A. Garner, *Garner's Dictionary of Legal Usage* 145 (3d ed. 2011) (explaining historically an original writ was issued in the King's name to officers of inferior tribunals directing them to return the records of the case pending before them to the King's bench so the party could achieve more sure and speedy justice).

[4] After discussing these two claims, Stuart contests the court's unprompted determination that he lacked standing to challenge the board's decision.  The board declines to "separately address this challenge" on appeal.  Against the district court's conclusion, we find Stuart was an "aggrieved party" who was injuriously affected by the board's decision, even if the enforcement matter was "in its infancy" as the board asserts.  *See Frank Hardie Advert., Inc. v. City of Dubuque Zoning Bd. of Adjustment*, 501 N.W.2d 521, 524 (Iowa 1993) ("Courts have analyzed the meaning of 'aggrieved party' by articulating a standing test.").

petition for certiorari. But in its September order, the court essentially annulled the writ by finding the facts in the petition insufficient to "sustain" a writ of certiorari. The court reached its conclusion after accepting evidence at the July 2019 hearing. Even if the court used imprecise labels, it still complied with the rules on certiorari. *See* Iowa R. Civ. P. 1.1411 (limiting judgment on certiorari "to annulling the writ or to sustaining it, in whole or in part, to the extent the proceedings below were illegal or in excess of jurisdiction").

So we turn to the key question: did the court properly annul the writ after finding the board did not violate due process? "Procedural due process requires, at the very least, notice and opportunity to be heard in a proceeding that is adequate to safeguard the right for which the constitutional protection is invoked." *Endress v. Iowa Dep't of Human Servs.*, 944 N.W.2d 71, 77–78 (Iowa 2020) (citations and internal quotation marks omitted). Stuart acknowledges he received notice but challenges the court's finding that he had an opportunity to be heard. He claims, "Just because there was a hearing attended by [Stuart] that [he] participated in does not necessarily guarantee that the hearing was adequate." And specifically, "[T]he limited *opportunity to be heard*, required to protect [Stuart's] protected property interests, provided by the Board at its hearing violated not only City of Dubuque ordinances but constitutional protections as well."

The following provisions of the City Code of Dubuque on the procedures for "Hearings and Appeals" are relevant to Stuart's appeal:

> A. Record: A record of the entire proceedings shall be made by tape recording or by any other means of permanent recording determined to be appropriate by the board or commission.

B. Reporting: The proceedings at the hearings may also be reported by a court reporter at the expense of any party.

Dubuque, Iowa, City Code § 2–1–2(A), (B).

A. Rules: Hearings need not be conducted according to the technical rules relating to evidence and witnesses.

B. Oral Evidence: Oral evidence shall be taken only on oath or affirmation.

. . . .

F. Rights Of Parties: Each party shall have these rights, among others:

1. To call and examine witnesses on any matter relevant to the issues of the hearing;

2. To introduce documentary and physical evidence;

3. To cross examine opposing witnesses on any matter relevant to the issues of the hearing;

4. To impeach any witness regardless of which party first called the witness to testify;

5. To rebut the evidence against said party; and

6. To self-representation or to be represented by anyone of the party's choice who is lawfully permitted to do so.

*Id.* § 2–1–5(A), (B), (F).  Section 16–8–1(C) further provides:

C. Internal Organization And Rules: The board may adopt rules and regulations to govern its organizational procedures as may be necessary and which are not in conflict with this code or the Iowa Code.

*Id.* § 16–8–1(C).  Pursuant to that provision, the board adopted bylaws relating to appeals, including article VII, section [5]:

At any appeal hearing, the order shall be as follows:

a. Appellant's presentation of the appeal.

b. Administrative Official's presentation of the appeal and decision.

c. Appellant's rebuttal.

d. Administrative Official's rebuttal.

e. Consideration by the Board.

f. Vote

The city concedes the board "did not follow every provision" but argues it "did not violate due process." Indeed, "A regulation or ordinance may well provide for procedures in excess of procedural due process requirements," and "[t]he failure to follow such a procedure or ordinance cannot give rise, in and of itself, to a due process violation." *Weizberg v. City of Des Moines*, 923 N.W.2d 200, 214 (Iowa 2018). "[I]n all cases, the focus of the analysis must be on the critical question of whether the process that was provided comported with the basic requirements of notice and an opportunity to be heard." *Id.* "[D]ue process is evaluated by considering the nature of the private interests involved, the risk of erroneous deprivation, and the nature of the government's interests." *Id.* at 215 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

To support his due-process argument, Stuart points to the board's acceptance of oral evidence without an oath or affirmation. He also complains the board did not "allow [him] to cross examine city witnesses" or "rebut or impeach a number of statements made by city personnel." Yet Stuart, who was represented by counsel at the meeting, acknowledges the board allowed him to speak and present material. Then the city's staff presented material. Then Stuart again. And finally the city's staff responded. This procedure complied with article VII, section [5] of the board's bylaws, set forth above. Stuart also acknowledged that "city personnel 'took notes'" during the hearing, considered his appeal, and voted to affirm the officer's decision.[5]

---

[5] Article VIII, section 1 of the board's bylaws states: "The final disposition of any appeal . . . shall be in the form of a motion, which shall affirm, modify or reverse . . . any order or decision of the Administrative Official."

Looking at all the protections afforded, we believe the board provided Stuart a meaningful opportunity to be heard. *See id.* at 214. Neither in the district court nor on appeal does Stuart explain how compliance with the "oath or affirmation" requirement for oral evidence would have enhanced his experience. The board's action did not hinge on a credibility finding. Likewise, the record shows Stuart had the chance to challenge the city's position even without the formality of cross-examination. Under these circumstances, the district court did not err in concluding Stuart's petition failed to allege a cognizable claim that the process provided to him did not satisfy procedural due process.[6]

Stuart also contends the board acted "arbitrarily and illegally" in failing to "make written findings and conclusions," per its own procedure.[7] The board's appeal decision stated, in part:

> **FINDINGS:** Based on the specific information presented at the Public Meeting and contained in the application, and in accordance with the applicable standards in Unified Development Code, the Board affirms staff's interpretation regarding storage on a residential property.
> **DECISION:** By a vote of 3 to 2, as indicated in the minutes, the Board affirmed Planning staff's interpretation that storage of construction materials, old furniture, antiques, and other miscellaneous materials not accessory to a residential use, is not permitted in residential districts, including the propert[ies] at 1589 [and 1591] Bluff Street, and is a violation of Section 16-5-6.1 of the Unified Development Code.

---

[6] Focusing on the property interest at issue, we note the violation notices stated that a *maximum* fine of $750 per day would be imposed *if Stuart did not comply* with the order to remove the items by March 8, 2019. In these circumstances, we do not find the property interest to be "particularly weighty." *Cf. Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 541 (Iowa 2019).

[7] Stuart points to the following provision: "**2-1-6: METHOD AND FORM OF DECISION:** . . . . B. Form Of Decision: The decision shall be in writing and shall contain findings of fact, a determination of the issues presented, and the requirements to be complied with."

Our courts recognize a "written-findings requirement" but allow substantial compliance to suffice. *See Palensky v. Story Cnty. Bd. of Adjustment*, No. 19-0349, 2020 WL 1879711, at *3 (Iowa Ct. App. Apr. 15, 2020) (discussing *Bontrager Auto Service*, 748 N.W.2d at 488, and *Citizens Against Lewis & Clark (Mowery) Landfill v. Pottawattamie County Board of Adjustment*, 277 N.W.2d 921, 924–25 (Iowa 1979)).

The board's appeal decision stated, "Minutes of the meeting and copies of materials submitted in evidence are on file in the Office of Planning Services, City Hall, Dubuque, Iowa." Those minutes include Stuart's argument that the "Unified Development Code (UDC) defines storage," "the UDC is silent on what personal property may be stored in a dwelling," and "he cannot use his building[s] properly if he cannot store materials." It set forth the board members' interpretations of the UDC provision at issue, including:

> Mr. Stuart is correct in that the UDC is silent regarding what materials may be stored in a residence. He said that; however, said materials are required to be accessory to the principal permitted use, which he said is residential. He said that these materials must be incidental, subordinate, and customary to the residential use of the building. He said that the building, to be considered a principal residential use, should have residential occupancy.

It further noted:

> [A Board member] said that the building currently does not have a principal use; therefore, an accessory use is not permitted. He said that the material inside the building needs to be clearly residential in nature and subordinate to the principal use of the property. He said that as there is no principal use within the building currently no accessory use is permitted. He said that the general intent of the ordinance is that the building is to be used for residential purposes. He said that storage is an accessory to the principal use.

The minutes also noted that the board's "decision should be based simply on the code language outlined in the UDC and in the Notice of Violation that was issued" to Stuart. Finally, the minutes stated that the board voted to affirm the zoning officer's interpretation that "storage of construction materials, old furniture, antiques, and other miscellaneous materials not accessory to a residential use, is not permitted in residential districts, including the propert[ies] at 1589 [and 1591] Bluff Street, and is a violation of Section 16–5–6.1."

Those minutes serve as written findings. *Cf. Palensky*, 2020 WL 1879711, at *4 ("[T]he Board made no findings of fact or conclusions of law in the CUP certificate, the minutes, or the meeting itself . . . ."). Here, the board's findings are "sufficient to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted." *Bontrager Auto Serv.*, 748 N.W.2d at 488 (quoting *Citizens*, 277 N.W.2d at 925). We therefore reject Stuart's contention that a lack of findings in the board's appeal decision was "a fatal flaw." *Cf. Burroughs*, 912 N.W.2d at 481 (citing *Bontrager Auto Serv.*, 748 N.W.2d at 488–90); *Palensky*, 2020 WL 1879711, at *3 ("[P]roceedings before a board of supervisors and like tribunals are necessarily informal and courts are not disposed to review them with technical strictness." (quoting *Thorson v. Bd. of Supervisors*, 90 N.W.2d 730, 735 (Iowa 1958))).

We affirm the district court's decision not to sustain the writ of certiorari.

**AFFIRMED.**