William L. PATCHETTE, Appellant,

v.

STATE of Iowa, Appellee.

No. 84–1680.

Supreme Court of Iowa.

Sept. 18, 1985.

Charles L. Harrington, Appellate Defender, and Deborah Goins, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Sarah J. Coats, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, LARSON, CARTER, and WOLLE, JJ.

LARSON, Justice.

William L. Patchette was released on a "work-seeking furlough" from the medium-security facility at Mt. Pleasant when he left the home where he was staying, to go jogging, and, apparently, just kept on going. He was later apprehended and, on September 21, 1982, was charged with violating six rules of the Mt. Pleasant facility. Apparently, through an oversight by prison officials, he was not charged with escape.

After a hearing before the prison disciplinary committee, Patchette was found guilty on five of the six charges. His punishment included loss of "good time" and suspension of his honor contract. Patchette filed a postconviction action under Iowa Code chapter 663A to challenge the committee's ruling. After the Attorney General's Office received notice of the postconviction action, it alerted prison officials to the fact they had failed to charge escape. The prison officials responded by (1) rescinding the prior order for loss of good and honor time and (2) filing a substituted complaint which included allegations that Patchette had violated the five rules originally found to have been violated and an additional charge of escape. Following the hearing on the second complaint, Patchette was found guilty on four of the five original counts, and was also found guilty of escape. In a separate postconviction application, Patchette challenged the second disciplinary hearing, and this action was consolidated with his original application. Following an adverse ruling by the district court, Patchette appealed. We affirm.

Patchette complains that (1) he was denied effective assistance of counsel in the postconviction proceedings because counsel failed to object to the punishment imposed in the first postconviction hearing; and (2) that the filing of a substituted disciplinary complaint penalized Patchette for filing the original postconviction petition and was tantamount to vindictive prosecution.

I. *Does an Ineffective Assistance of Counsel Claim Apply in a Prison Disciplinary Case?*

At the outset, the parties disagree whether a claim of ineffective assistance of counsel may be raised. It is clear such a claim may be made when a *conviction* is attacked in a postconviction proceeding, *see, e.g., Snethen v. State,* 308 N.W.2d 11, 14 (Iowa 1981); *Sims v. State,* 295 N.W.2d 420, 422–23 (Iowa 1980); *Kellogg v. State,* 288 N.W.2d 561, 563 (Iowa 1980). But does this general rule also apply to a postconviction case arising out of a prison proceeding, which is said not to involve the "full panoply of rights due a defendant" in a criminal proceeding? *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974).

Our code provides that postconviction relief is available when there is a claim that "the person is ... unlawfully held in custody or other restraint." Iowa Code § 633A.2(5). We held in *Davis v. State,* 345 N.W.2d 97, 98–99 (Iowa 1984) that this included challenges to prison disciplinary proceedings.

Our postconviction procedures act also provides that:

> [i]f the applicant is unable to pay court costs and expenses of representation, including stenographic, printing, and legal services, these costs and expenses shall be made available to the applicant in the preparation of the application, in the trial court, and on review.

Iowa Code § 663A.5.

Patchette argues that section 663A.5 implies that effective assistance of counsel must be provided. The State counters that this section merely provides a procedural devise for determining who shall pay the cost of representation, a "mechanism ... through which indigent inmates could afford counsel in their postconviction proceedings," and not a statutory requirement of effective assistance of counsel.

■ We believe the statutory grant of a postconviction applicant's right to court-appointed counsel necessarily implies that that counsel be effective. We do not believe a different rule should be applied merely because a postconviction proceeding

is brought to challenge a prison disciplinary ruling, rather than an action attacking the conviction itself. Nothing in our postconviction act indicates an intent on the part of the legislature that a different rule would apply. It would seem to be an empty gesture to provide counsel without any implied requirement of effectiveness.

In an analogous case, the Supreme Court has said that

> the promise of ... a right to counsel on appeal—like the promise of *Gideon* that a criminal defendant has a right to counsel at trial—would be a futile gesture unless it comprehended the right to the effective assistance of counsel.

*Evitts v. Lucey,* 469 U.S. ——, ——, 105 S.Ct. 830, 836–37, 83 L.Ed.2d 821, 830–31 (1985). *See also Heath v. State,* 372 N.W.2d 265, 266 (Iowa 1985) (ineffective assistance of counsel raised in administration revocation of parole).

█ We conclude that the issue of effective assistance of counsel may be raised in a postconviction proceeding arising out of disciplinary hearings. We do so solely on our interpretation of Iowa Code section 663A.5, and we express no opinion as to whether it would be constitutionally mandated in the absence of such a statute.

We now proceed to the question of whether Patchette has sustained his burden of showing ineffective assistance in this case.

█ To prevail on a claim of ineffective assistance of counsel, a claimant must show the attorney's performance was deficient and that, as a result, there was prejudice to him. *Strickland v. Washington,* —— U.S. ——, ——, 104 S.Ct. 2052, 2069–70, 80 L.Ed.2d 674, 694 (1984); *State v. Miles,* 344 N.W.2d 231, 233–34 (Iowa 1984). It is presumed that counsel was effective, and this presumption must be overcome by the plaintiff. *Sims,* 295 N.W.2d at 423. The burden of proof is a preponderance of the evidence. *Id.* We believe these rules, which have been developed in cases attacking underlying criminal convictions, should

also apply in postconviction attacks on prison disciplinary proceedings.

Patchette's basis for a claim of ineffective assistance stems from his attorney's failure to challenge the propriety of the disciplinary committee's penalty. Under the statute, which we will set out later, the only way a prisoner could be deprived of all good and honor time was either to have been found guilty of five violations or an escape. Patchette contends that, because the acts here all arose out of the same circumstances, he could not be charged with five separate offenses. Escape was not originally charged in the disciplinary report. Therefore, the punishment imposed, loss of all good and honor time, was illegal. According to Patchette, his counsel's failure to point out the illegal punishment in the postconviction proceeding amounted to ineffective assistance of counsel.

The State argues that, even if ineffective assistance of counsel could be raised in such a proceeding, the punishment imposed was proper. As a result, there could have been no prejudice to Patchette by his counsel's failure to raise the issue.

In order to determine whether prejudice existed, we must look first to the propriety of the punishment imposed. This requires an examination of the two disciplinary complaints and the circumstances surrounding them.

The six violations originally charged were: felonious conduct; disobeying a lawful order; violating a condition of leave; unauthorized absence-presence; obstructive/disruptive conduct; and attempt/complicity. Each of these alleged violations is defined by a separate rule in the prison manual.

The second disciplinary complaint alleged five of the original six charges and added escape which, under the prison rules, was defined thus:

> *Escape:* A resident commits an offense under this subsection when the resident:
> a. By force or threat of force, without proper authority removes him/herself from the confines of the in-

stitution or from official custody while beyond the confines of the institution, or

b. Without proper authority, removes her/himself from the confines of the institution or from official custody following temporary leave granted for a specified period of limited duration.

May modify tardiness on a return from furlough to an unauthorized absence.

Iowa Code section 246.41 provided the penalties to be assessed for rule violations:

A prisoner who violates any of such rules [of discipline] shall forfeit the reduction of sentence earned by him, as follows:

1. For the first violation, two days.

2. For the second violation, four days.

3. For the third violation, eight days.

4. For the fourth violation, sixteen days and, in addition, whatever number of days more than one that he is in punishment.

5. For the fifth and each subsequent violation, *or for an escape*, or attempt to escape, the warden shall have the power, with the approval of the state director, to deprive the prisoner of any portion of all of the good time that the convict may have earned.

(Emphasis added.)

Section 246.41 has now been replaced by section 903A.3 (1985), which allows for expanded discretion on the part of the prison administration in determining the punishment for disciplinary violations. The new section has deleted any reference to the number of violations. This amendment is inapplicable here.

The question raised is whether the five violations of which Patchette was found guilty, in the first disciplinary hearing, could be considered sufficient to revoke all of his good and honor time under the "fifth and ... subsequent violation" provision of section 246.41(5). Patchette argues that the five violations involved could not elevate the offenses to the point where the maximum punishment was imposed under that section, and that his lawyer rendered ineffective assistance of counsel in failing to point that out in the postconviction proceeding. *See State v. Clark*, 351 N.W.2d 532, 536 (Iowa 1984). He relies principally on two Iowa cases, *Clark*, 351 N.W.2d 532, and *State v. Hollins*, 310 N.W.2d 216 (Iowa 1981).

The State counters by arguing that those cases must be distinguished. Furthermore, even if the five violations could not be considered as independent violations, the hearing under the second disciplinary complaint resulted in a finding that Patchette had escaped, and this violation alone was sufficient to revoke all of his good time.

In *Clark*, we held that each of the prior "offenses" under the OWI statute, Iowa Code section 321.281, must have gone through final judgment in order to enhance the punishment for the current offense. In reaching that conclusion, we relied on *Hollins*, which involved a general habitual criminal statute, Iowa Code section 902.8 providing that

[a]n habitual offender is any person convicted of a class "C" or a class "D" felony, who has twice before been convicted of any felony in a court of this or any other state, or of the United States.

*Hollins*, 310 N.W.2d at 217; *Clark*, 351 N.W.2d at 536–37.

*Hollins*, like *Clark*, required that "each succeeding conviction must be subsequent in time to the previous conviction." 310 N.W.2d at 217. This, of course, would rule out use of separate, but simultaneous, offenses for purposes of enhancing the punishment.

There is another line of cases, however, which takes a different approach. In *State v. Thomas*, 275 N.W.2d 422, 423 (Iowa 1979), for example, we held that separate traffic offenses committed simultaneously may be used to establish an habitual offender status. There the statute, Iowa Code section 321.555(1), defined an habitual traffic offender as "any person who has accumulated convictions for separate and distinct offenses described in [enumerated categories]."

We noted in *Thomas* that, ordinarily, habitual criminal statutes are aimed at re-

peated acts or persistent conduct, and this "would ordinarily rule out the separate use of two convictions which arose out of the same acts." 275 N.W.2d at 423. A reading of section 321.555(1), however, prompted us to apply a different rule under the circumstances of that case. The statute required only that the offenses be "separate and distinct" without any indication they had to arise out of separate events. We concluded that the habitual criminal statute involved there focused on the number of convictions rather than the persistency of the conduct. *Id.* *See also State v. Baudler,* 349 N.W.2d 493 (Iowa 1984), which reached the same result under a similar traffic statute.

■ The issue here is whether the prison disciplinary statute is aimed at persistent or repeated conduct, such as normally found in habitual criminal statutes, or one aimed primarily at the number of offenses. We conclude that section 246.41 is aimed at persistency of the conduct rather than solely looking to the number of offenses involved. Section 246.41 provides a graduated punishment on a step-by-step basis, and we believe this approach makes the statute more closely resemble the traditional habitual offender statute than the type involved under the motor vehicle code. Under this interpretation, the prison officials improperly enhanced the punishment by considering violations simultaneously committed.

The State, however, has an alternative argument, that by charging escape the substituted complaint cured any problems in the first proceedings. Patchette claims foul. The prison officials were alerted to the deficiency in the prior proceedings by his filing of the first postconviction application and, according to him, they should not be permitted to mend their hold in this way.

This brings us to the second issue.

II. *The "Vindictiveness" Issue.*

The basis for Patchette's objection to the substituted proceedings is not clear. In his amended and substituted postconviction application, it was attacked on double jeopardy grounds. On appeal, he claims only that this action was vindictive, thus a denial of due process. Double jeopardy is not argued.

■ In any event, it is clear that double jeopardy principles apply only to criminal cases. *See Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346, 354 (1975); *State v. Kerns,* 201 Neb. 617, 619, 271 N.W.2d 48, 50 (1978) (prison disciplinary proceedings and subsequent conviction for same offense did not violate double jeopardy clause); 21 Am.Jur.2d *Criminal Law* § 249, at 444 (1981).

■ And, while Patchette argues on appeal that the action of the disciplinary committee was vindictive within the rule of *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), he did not urge this issue in the district court. We cannot consider an issue for the first time on appeal, even if it is of constitutional dimension. *Davoren v. Iowa Employment Security Commission,* 277 N.W.2d 602, 603 (Iowa 1979); *Lemon v. City of Muscatine,* 272 N.W.2d 429, 430 (Iowa 1978).

We express no view as to whether the substituted disciplinary proceeding would withstand scrutiny under a vindictiveness challenge if it had been properly asserted in district court.

■ In summary, we conclude (1) that Patchette may assert a claim of ineffective assistance of counsel in a postconviction proceeding attacking prison disciplinary proceedings; (2) that Iowa Code section 246.241(5) (1983) does not permit enhancement of the penalty by acts committed simultaneously; but (3) no prejudice was shown by counsel's failure to object to the punishment because the subsequent proceedings, not successfully challenged on appeal, cured the problem.

AFFIRMED.