# In the Iowa Supreme Court

No. 24–1422

Submitted October 8, 2025—Filed February 20, 2026

**Beecher Store, Inc.,**

Appellant,

vs.

**Iowa Department of Revenue Alcoholic Beverages Division,**

Appellee.

Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, judge.

An alcohol licensee appeals sanctions arising from sales of alcohol to underage buyers. **Affirmed.**

May, J., delivered the opinion of the court, in which Waterman, Mansfield, and McDonald, JJ., joined. Oxley, J., filed a dissenting opinion, in which Christensen, C.J., and McDermott, J., joined.

Theodore T. Appel (argued), Kevin C. Rigdon, and Olivia A. McGovern of Bradley & Riley PC, Cedar Rapids, for appellant.

Brenna Bird, Attorney General, and John R. Lundquist (argued), Assistant Attorney General, for appellee.

**May, Justice.**

Drinking alcohol can create dangers. In response to those dangers, Iowa's elected lawmakers have enacted various restrictions on the sale of alcohol. Two of those restrictions are relevant here.

First, Iowa Code section 123.49(2)(*h*) (2022) prohibits employees of a retail alcohol licensee—such as a liquor store—from selling alcohol to people who are under the age of twenty-one. We call this prohibition "the underage rule."

Second, Iowa Code section 123.50(3) imposes sanctions on alcohol licensees if their employees violate the underage rule. And if multiple violations occur within specified timeframes, the sanctions get tougher. For instance, although a first violation subjects the licensee to a $500 civil penalty, a "second violation within two years" subjects the licensee to both a $1,500 civil penalty and a thirty-day license suspension. *Id.* § 123.50(3)(*a*)–(*b*).

In this case, the question is whether the sanctions for a "second violation within two years" apply when a liquor store employee violates the underage rule twice in one day by making two separate sales of alcohol to two different minors about five minutes apart. The answer is yes. In that scenario, there are two violations: a first violation with the first minor and a second violation with the second minor. And because the two violations occur on the same day, the "second violation" occurs "within two years" of the first. So the sanctions for a "second violation within two years" apply. *See id.*

**I. Background.**

Beecher Store, Inc. (Beecher) holds a class "E" retail alcohol license for its business, Beecher Liquor in Dubuque. This kind of license authorizes Beecher to sell beer, liquor, and wine "to go." *See id.* § 123.30(3)(*e*)(1).

On the evening of October 15, 2022, the Dubuque Police Department conducted compliance checks at alcohol-selling businesses across Dubuque, including Beecher Liquor. Outside of Beecher Liquor, officers gave cash to two underage individuals and sent them inside to try to buy alcohol. Each buyer went to a cooler, grabbed a single alcoholic beverage, and approached the counter to check out. There were two employees behind the counter. Owais Mohammed Khan was one of them. Each buyer approached Khan separately. Each buyer presented an alcoholic beverage to Khan separately. Khan checked out each buyer separately. Each buyer left with a beverage.

The buyers presented the beverages to the police officers. They told the officers that Beecher's clerk had looked at their IDs but did not scan the IDs to verify their ages.

The police issued two criminal citations to Khan—one for each sale. Each citation charged Khan with violating Iowa Code section 123.49(2)(*h*), the prohibition on selling alcohol to underage people. The first citation identified the violation time as 9:45 p.m. on October 15. The second citation identified 9:50 p.m. as the violation time.

Khan pleaded guilty to both citations on October 19. Then the Iowa Alcoholic Beverages Division (ABD) issued two civil penalty orders to Beecher. The first order imposed a civil penalty of $500. That is the penalty required by Iowa Code section 123.50(3)(*a*) for a first violation of the underage rule.

The second order imposed the civil penalty of $1,500 plus a thirty-day license suspension. Those are the penalties required for a second violation within two years. *Id.* § 123.50(3)(*b*).

Beecher did not contest the first-violation order. But Beecher did contest the second-violation order.

Beecher's contest was heard by an administrative law judge (ALJ). Beecher complained that it had received no notice between the two violations. And so, Beecher argued, the ALJ should use "leniency" to determine "that both violations were, in fact, one series of events" and, therefore, a second-violation order was not warranted.

The ALJ rejected Beecher's request. Although the two sales were close together in time, the second sale was still a second violation. So the ALJ upheld the second-violation order.

Beecher sought agency review of the ALJ's decision. The ABD rejected Beecher's challenge and, instead, issued a final agency decision that affirmed and adopted the ALJ's decision. Beecher then filed a petition for judicial review. The district court denied Beecher's petition. Beecher then filed this appeal, which we retained.

## II. Issues Presented.

Beecher raises two arguments here:

1. The ABD wrongly interpreted Iowa Code section 123.50(3).
2. Alternatively, Iowa Code section 123.50(3) is "void for vagueness" under the United States Constitution and the Iowa Constitution.

## III. Standards of Review.

We apply different standards of review to different kinds of arguments. Going in reverse order, we review Beecher's constitutional argument de novo. *Banwart v. Neurosurgery of N. Iowa, P.C.*, 18 N.W.3d 267, 272 (Iowa 2025); *Jim O. Inc. v. City of Cedar Rapids*, 587 N.W.2d 476, 478 (Iowa 1998).

As for Beecher's statutory-interpretation argument, "[w]e review an agency's interpretation of a statute for errors at law unless the legislature has clearly vested interpretive authority in the agency." *Calcaterra v. Iowa Bd. of*

*Med.*, 965 N.W.2d 899, 903 (Iowa 2021); *see Renda v. Iowa C.R. Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). "If agency discretion has been granted by the legislature," we apply a more deferential standard and "will reverse [the] agency's interpretation only if it is 'irrational, illogical, or wholly unjustifiable.'" *Calcaterra*, 965 N.W.2d at 903 (quoting *Renda*, 784 N.W.2d at 10).

In *Renda v. Iowa Civil Rights Commission*, we identified two circumstances in which we will find that interpretive authority has been granted to an agency. The first is where the legislature has "explicitly" granted interpretive authority. 784 N.W.2d at 11; *see, e.g., Iowa Ass'n of Sch. Bds. v. Iowa Dep't of Educ.*, 739 N.W.2d 303, 307 (Iowa 2007) (noting that Iowa Code section 256.9(16) (2003) explicitly provided that the director of the department of education "shall . . . [i]nterpret the school laws and rules relating to the school laws" (alteration and omission in original)). That is not the situation here. Although section 123.10 grants *rulemaking* authority to the ABD, that is not the same as authority to interpret the statute. *See Renda*, 784 N.W.2d at 11, 13.

*Renda* also said that interpretive authority is implied "when the statutory provision being interpreted is a substantive term within the special expertise of the agency." *Id.* at 14. But if "the provisions to be interpreted are found in a statute other than the statute the agency has been tasked with enforcing," or if the terms at issue have "an independent legal definition that is not uniquely within the subject matter expertise of the agency, we generally conclude the agency has not been vested with interpretative authority." *Id.*

In this case, the interpretive question is whether two violations on one evening can count as both a first violation and a "second violation within two years" for purposes of Iowa Code section 123.50(3). We don't think that any of the statutory words involved—"second," "violation," "within," "two," and

"years"—are "substantive term[s]" that fall "within the special expertise" of the ABD. *Renda*, 784 N.W.2d at 14. Rather, they are common, everyday words. They appear throughout the Iowa Code. And they are regularly interpreted by courts in a variety of contexts. So we believe that review for errors at law is appropriate. *See Calcaterra*, 965 N.W.2d at 903. We proceed to that review now.

**IV. Analysis.**

**A. Statutory Interpretation.** Although drinking alcohol may have benefits, its dangers are well known. And we have long recognized that the State of Iowa, "in the exercise of its police power," may protect its citizens against those dangers by regulating traffic in alcohol or, indeed, "prohibit[ting] it entirely." *McLane v. Bonn*, 30 N.W. 478, 480 (Iowa 1886).

Iowa has exercised that power through enactment of the Iowa Alcoholic Beverage Control Act, which is now codified in Iowa Code chapter 123. The reasons for the Act are explicitly stated. In its very first section, the Act states that it "shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace, morals, and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose." Iowa Code § 123.1. The Act then declares it "to be public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, except as provided in" the Act. *Id.*; *see Sanford v. Fillenwarth*, 863 N.W.2d 286, 290 (Iowa 2015) ("The Act is predicated on a policy that 'traffic in alcoholic liquors' should be strictly regulated in the public interest.").

These protective policies are advanced through the Act's many substantive requirements. For instance, Iowa Code section 123.2 flatly prohibits the sale of alcohol "except upon the terms, conditions, limitations, and restrictions

enumerated" in the Act. Those terms include a requirement that retail alcohol vendors, such as Beecher, must hold and maintain an alcohol license. *See id.* § 123.30(3)(*e*)(1). Even so, an alcohol license is "not property" that a licensee could own. *Id.* § 123.38(1). Rather, the license "is a personal privilege" that is "revocable for cause." *Id.* To retain that privilege, licensees must comply with the host of other restrictions imposed in chapter 123.

As explained, two of those restrictions are particularly relevant here. First, Iowa Code section 123.49(2)(*h*) contains the underage rule, that is, the rule that employees of retail alcohol licensees must not sell any alcoholic beverage to an underage person "knowing or failing to exercise reasonable care to ascertain whether the person is" underage.

A separate provision, Iowa Code section 123.50(3), holds licensees responsible for their employees' violations of the underage rule. It holds them responsible by mandating sanctions for licensees whose employees are convicted or found in violation of that rule. The type of sanctions depends on the timing and number of violations, as follows:

- Under paragraph (3)(*a*), "[a] first violation shall subject the licensee or permittee to a civil penalty in the amount of five hundred dollars." *Id.* § 123.50(3)(*a*).

- Under paragraph (3)(*b*), "[a] second violation within two years shall subject the licensee or permittee to a thirty-day suspension and a civil penalty in the amount of one thousand five hundred dollars." *Id.* § 123.50(3)(*b*).

- Under paragraph (3)(*c*), "[a] third violation within three years shall subject the licensee or permittee to a sixty-day suspension and a civil

penalty in the amount of one thousand five hundred dollars." *Id.* § 123.50(3)(*c*).

- Under paragraph (3)(*d*), "[a] fourth violation within three years shall result in revocation of the license." *Id.* § 123.50(3)(*d*).

Section 123.50(3) is also specific about how to calculate the number of violations that have occurred within a given time period. It requires that "[t]he date of any violation shall be used in determining the period between violations." *Id.* § 123.50(3)(*e*)(1).

In this case, the ABD imposed sanctions on Beecher for two violations. The first violation occurred when Beecher's clerk sold alcohol to the first underage buyer. Under paragraph (3)(*a*), this first violation subjected Beecher to a $500 civil penalty.

The second violation occurred when Beecher's clerk sold alcohol to the second underage buyer. Because this "second violation" occurred minutes after the first violation, it also occurred "within two years" of the prior violation. Therefore, under paragraph (3)(*b*), the second violation subjected Beecher to a "thirty-day suspension" as well as a $1,500 civil penalty.

On appeal, Beecher argues that the second-violation penalty was unlawful because the second violation was too close in time—only minutes apart—with the first violation. We disagree. We find the meaning of a statute in its words. *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) ("[W]e ask only what the statute means" and "[t]his is necessarily a textual inquiry as only the text of a piece of legislation is enacted into law." (first quoting Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 Harv. L. Rev. 417, 419 (1899))). The words of section 123.50(3)(*b*) do not support Beecher's theory. As the ALJ properly noted, "[t]here is no minimum period of time required in [section 123.50(3)(*b*)]

between the first and second violations." Rather, section 123.50(3)(*b*) only prescribes a *maximum* period—two years—that can separate the two violations. If the legislature had also intended to require a *minimum* period of separation between the violations—so many minutes, hours, or days—the legislature surely would have said so. But it did not. And, of course, "[w]e are not at liberty to rewrite the statute." *Marek v. Johnson*, 958 N.W.2d 172, 177 (Iowa 2021).

Beecher also suggests that "recidivist principles" require us to find that the second violation can't count as a "second violation" under the statute because Beecher wasn't penalized between the first and second violations. As support, Beecher points us to cases in which we have relied on a "principle of strict construction" when interpreting statutes (mostly criminal, although not all) that impose escalating penalties for recidivist behavior. *State v. Conley*, 222 N.W.2d 501, 503 (Iowa 1974). Beecher also points to a presumed legislative "purpose" for greater sanctions to apply only to "persistent violators" who continue to commit new crimes despite the "separate warning" that is provided by each cycle of violation, conviction, and punishment. *Id.*

We reject Beecher's theory. As noted, we are bound by the words that the legislature chose, the text of the statute. And here, the text could hardly be clearer or plainer. So long as there are two violations—a first violation and a "second violation"—"within two years," section 123.50(3)(*b*) applies. Conversely, nothing in the text supports Beecher's view that there must be a punishment between the two violations. And, of course, we cannot add an intervening-punishment requirement that the legislature chose not to enact. *See Miller v. Cath. Health Initiatives-Iowa, Corp.*, 7 N.W.3d 367, 377 (Iowa 2024) ("[T]he letter of a clear and unambiguous statute cannot be disregarded under the pretext of pursuing its spirit." (quoting *Bride v. Trinity Hosp.*, 927 N.W.2d

416, 420 (N.D. 2019))); *Wallace v. Wildensee*, 990 N.W.2d 637, 646 (Iowa 2023) ("[W]e cannot refuse to follow Iowa statutes for the sake of public policy because we sit on a court of law, not a court of public policy.").

We have considered all the other points raised in Beecher's briefs. They do not alter our conclusion. For instance, Beecher contends that if two violations occur on the same date, those violations cannot occur "within two years" of each other. As support, Beecher points to Iowa Code section 123.50(3)(*e*)(1), which provides that "[t]he date of any violation shall be used in determining the period between violations" for purposes of section 123.50(3). According to Beecher, this means that when two violations occur on the same date, there is no period between the violations, and, therefore, the violations cannot have occurred "within two years" of each other.

We disagree. Ultimately, Beecher is arguing that section 123.50(3)(*e*)(1) requires that a particular bit of time—at least a change from one date to the next[1]—must pass between violations. As explained, though, we don't see a minimum-passage-of-time requirement in the text. Instead, we think section 123.50(3)(*e*)(1) just tells us how to *measure* the time that passes "between violations." It tells us to measure the time between "[t]he date[s] of [the] violations" themselves (rather than, for instance, the dates of employees' personal convictions for those violations). We have followed this approach throughout our analysis.

More broadly, Beecher's theory is hard to square with ordinary English. *See Jorgensen v. Smith*, 2 N.W.3d 868, 874 (Iowa 2024) ("[W]e usually give statutory words their ordinary meanings."). While it is true, as Beecher notes,

---

[1]In practice, this could be a very small period of time. If the first violation occurs at 11:59 p.m. on December 31, and the second violation occurs at 12:01 a.m. on January 1, then the violations occur on two different dates (in two different years).

that both violations occurred on the same date, that doesn't mean that the two violations couldn't have occurred "within two years" of each other. By way of analogy, consider John Adams and Thomas Jefferson. They both died on the same date (July 4, 1826). Yet no one would doubt that Adams's death happened within two years of Jefferson's. Likewise, in this case, we have no doubt that the two violations—both on the same date—occurred within two years of each other. And so the second violation was indeed a "second violation within two years" for purposes of section 123.50(3)(*b*).

**B. Due Process Challenge.** Finally, we mention Beecher's due process argument. As Beecher notes, the due process doctrine of "void for vagueness" sometimes prohibits enforcement of statutes. *State v. Nail*, 743 N.W.2d 535, 539 (Iowa 2007).

As we recently explained, however, "[a] civil statute is generally deemed unconstitutionally vague only if it commands compliance in terms 'so vague and indefinite as really to be no rule or standard at all.' " *Banwart*, 18 N.W.3d at 276 (quoting *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 396 (2d Cir. 2004)). And so we reject vagueness challenges to unambiguous provisions. *State v. Rhodes*, 6 N.W.3d 741, 752 (Iowa 2024).

It follows that we must reject Beecher's vagueness attack here. Because section 123.50(3) is not ambiguous, it is not unconstitutionally vague.

We also reject Beecher's complaint that because police have discretion as to how many underage buyers they can send to a liquor store on any given evening, the police have too much power to "arbitrarily decide what level of sanctions" a licensee should receive.

Again, we see no ambiguity in section 123.50(3). The statute is quite clear about what specific events will trigger what specific sanctions. It contains none

of the vagueness that might allow police (or courts) to make arbitrary decisions about what sanctions should follow from what events.

Also, Beecher overlooks the fact that *licensees* have both the power and the responsibility to prevent their employees from selling alcohol to minors. Sanctions can occur only if a licensee chooses to shirk that responsibility. We see nothing "arbitrary" or unfair about that.

**V. Conclusion.**

Because there were two violations within two years, sanctions under section 123.50(3)(*b*) were properly issued. We affirm.

**Affirmed.**

Waterman, Mansfield, and McDonald, JJ., join this opinion. Oxley, J., files a dissenting opinion, in which Christensen, C.J., and McDermott, J., join.

#24–1422, *Beecher Store, Inc. v. Alcoholic Beverages Division*

**Oxley, Justice (dissenting).**

The majority's opinion is notable for its simplistic approach to interpreting Iowa Code section 123.50(3) (2022). But its simplistic approach is specious. The majority purports to apply the plain text of section 123.50(3) yet refuses to engage with the actual words used. The word "two" is not—as the majority simplistically declares—interchangeable with the word "second." Rather, cardinal numbers (e.g., one, two, three) express quantity, while ordinal numbers (e.g., first, second, third) express order. The two numerical concepts sometimes overlap, but they are distinct concepts. The distinction between cardinal and ordinal numbers has played a foundational role in fifty-two years of precedent involving recidivist statutes. *See generally State v. Conley*, 222 N.W.2d 501 (Iowa 1974) (deciding as a matter of first impression that some habitual offender statutes are recidivist statutes). The majority is wrong to ignore that precedent.

Recidivism describes the "tendency to relapse into a previous condition or mode of behavior" or "repeated relapse into criminal or delinquent habits." *Recidivism*, Webster's Third New International Dictionary 1895 (unabr. ed. 2002). Iowa has a large, well-settled body of caselaw recognizing that certain habitual offender statutes—which impose escalating penalties for repeated violations of a statute—are interpreted using recidivist principles. *E.g.*, *State v. Freeman*, 705 N.W.2d 286, 288–91 (Iowa 2005) (discussing Iowa's caselaw).

A habitual offender statute is recidivist when the text of the "statute emphasizes conviction and disposition of the prior offense." *Conley*, 222 N.W.2d at 502. In a recidivist statute, a violation is a second (or third or fourth) offense and subject to the statute's enhanced penalties only if the violation happens after the previous violation has resulted in conviction and penalty.

*E.g., id.* at 502–03; *State v. Woody*, 613 N.W.2d 215, 218 (Iowa 2000) (en banc); *State v. Hollins*, 310 N.W.2d 216, 217–18 (Iowa 1981). As we recently said in a unanimous opinion, "[s]equence matters." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Tindal*, 949 N.W.2d 637, 644 (Iowa 2020). The reason sequence matters is simple: "There can be no recidivism until after conviction of crime and imposition of penalty." *Conley*, 222 N.W.2d at 502–03; *accord Tindal*, 949 N.W.2d at 644–45. The enhanced punishment applies when an offender repeats his offense despite the "restraining influence" of previous punishment. *Conley*, 222 N.W.2d at 503.

"By 1998, our cases consistently held that this state followed the general rule that each offense must be complete as to a conviction and sentencing before commission of the next in order to qualify for the enhancement of penalty under a habitual offender statute, *unless the legislature expressly provided otherwise.*" *Freeman*, 705 N.W.2d at 291 (emphasis added) (distinguishing Iowa Code section 124.401(5), which was enacted without an express definition of a "second offense," from section 124.411(2) at issue in *State v. Wade*, 467 N.W.2d 283, 285 (Iowa 1991), which did include an express definition). We have recognized recidivist principles this way in a variety of contexts, both criminal and civil. *See, e.g., Conley*, 222 N.W.2d at 502–03 (criminal statute); *Tindal*, 949 N.W.2d at 644–45 (attorney discipline); *Patchette v. State*, 374 N.W.2d 397, 399–401 (Iowa 1985) (civil statute).

Rather than engage with these cases, the majority simply ignores our precedent holding that—unless the general assembly expressly provides otherwise—"each succeeding conviction must be subsequent in time to the previous conviction" for enhanced penalties under a recidivist statute. *Patchette*, 374 N.W.2d at 400–01 (quoting *Hollins*, 310 N.W.2d at 217). Our prior decisions demonstrate that section 123.50(3) is a recidivist statute based on the language

the general assembly used. Yet the majority simply ignores those cases, destabilizing more than five decades of once-coherent precedent. I respectfully dissent.

**A. Section 123.50(3) Is a Recidivist Statute.** Iowa has long followed "the general rule" around the country for recidivist statutes. *Conley*, 222 N.W.2d at 503. In *State v. Conley*, we recognized for the first time that some habitual offender statutes require a particular sequence for enhanced penalties to apply. *Id.* The statute at issue deemed someone a "habitual criminal" after they had been "twice convicted of crime, sentenced, and committed to prison" for a sentence of three years or more. *Id.* at 501–02 (quoting Iowa Code § 747.5). A habitual criminal received greater punishment. *Id.* The statute was considered recidivist because, in determining when an enhanced penalty applies, it made specific reference to the conviction or disposition of the prior offenses. *Id.* at 502–03 ("Here the statute defines the conditions for its application. In doing so it makes the nature of the disposition of the two prior convictions determinative of their use as predicates for the greater penalty upon a third conviction. The defendant must have been on each prior occasion 'convicted of crime, sentenced, and committed to prison . . . .' Significantly, the statute emphasizes conviction and disposition of the prior offense."). Thus, we held that the defendant was not a habitual criminal even though he committed three qualifying felonies because the proper sequence did not exist. *Id.* at 503. "[T]he fact both offenses antedated both convictions [was] determinative." *Id.* at 502.

The logic behind a statute that enhances penalties for sequential violations requires that the "imposition of penalty must precede each succeeding offense." *Id.* Beecher correctly argues that there must be some "separate warning" that "serves as a predicate for" applying an enhanced penalty under the habitual

offender statute. *Id.* We have repeatedly reaffirmed this principle since *Conley* was decided in 1974. *See, e.g., Freeman,* 705 N.W.2d at 288–91; *Woody,* 613 N.W.2d at 218; *Patchette,* 374 N.W.2d at 400–01; *Hollins,* 310 N.W.2d at 216–18; *State v. Robinson,* 262 N.W.2d 270, 271–72 (Iowa 1978); *State v. Tillman,* 228 N.W.2d 38, 41–42 (Iowa 1975). A recidivist statute is "intended to apply [enhanced penalties] to persistent violators who have not responded to the restraining influence" that accompanies legal consequences. *Conley,* 222 N.W.2d at 503.

This framework applies outside of the criminal context as well. *See Patchette,* 374 N.W.2d at 399–401. In *Patchette v. State,* we addressed loss of good time credits in a prison disciplinary setting and concluded the statute was "aimed at persistency of the conduct rather than solely looking to the number of offenses involved" because of its "graduated punishment on a step-by-step basis." *Id.* at 401. We interpreted the statute using our ordinary recidivist principles from the *Conley* line of cases, rather than following cases interpreting habitual offender statutes that depend purely on the number of violations committed. *Id.* at 400–01 (explaining a statute "aimed at repeated acts or persistent conduct . . . 'ordinarily rule[s] out the separate use of two convictions which arose out of the same acts.'" (quoting *State v. Thomas,* 275 N.W.2d 422, 423 (Iowa 1979) (en banc))).

In *Patchette,* we construed Iowa Code section 246.41 (1983), which imposed loss of good time credits for prison rule violations as follows:

> A prisoner who violates any of such rules [of discipline] shall forfeit the reduction of sentence earned by him, as follows:
>
> 1. For the first violation, two days.
>
> 2. For the second violation, four days.
>
> 3. For the third violation, eight days.

4. For the fourth violation, sixteen days and, in addition, whatever number of days more than one that he is in punishment.

5. For the fifth and each subsequent violation, *or for an escape*, or attempt to escape, the warden shall have the power, with the approval of the state director, to deprive the prisoner of any portion of all of the good time that the convict may have earned.

*Id.* (quoting Iowa Code § 246.41 (1983)). When the prisoner in *Patchette* committed five violations that all arose from the same circumstances, we said that separate but simultaneous offenses could not be used to enhance punishment beyond the "first violation." *Id.* at 400–01.

We distinguished the recidivist scheme in *Patchette* from habitual criminal statutes that "focused on the number of convictions rather than the persistency of the conduct." *Id.* at 401 (citing *Thomas*, 275 N.W.2d at 423; *State v. Baudler*, 349 N.W.2d 493 (Iowa 1984)). Because the scheme at issue provided escalated punishment for sequential violations, we held it "more closely resemble[d] the traditional habitual offender statute" that enhances punishment for recidivism than it did a habitual offender statute from the motor vehicle code that suspended a person's driver's license once they reached a specified number of driving violations. *Id.* (discussing *Thomas*, 275 N.W.2d at 423). We were clear that the recidivist scheme did "not permit enhancement of the penalty by acts committed simultaneously." *Id.* Like *Conley*, the sequence of events was dispositive under the recidivist statute in *Patchette*. *Id.*; *Conley*, 222 N.W.2d at 503.

The majority makes no mention of it, but section 123.50(3) is materially indistinguishable from the recidivist civil penalty scheme in *Patchette*. "If any liquor control licensee, wine or beer permittee, or employee of a licensee or permittee is convicted or found in violation of section 123.49, subsection 2, paragraph 'h', the administrator or local authority shall . . . assess a civil penalty

as follows," with escalating punishment for a "first violation," a "second violation," and a "third violation," until a "fourth violation . . . result[s] in revocation of the license [to sell alcohol]." Iowa Code § 123.50(3) (2022). There is no principled reason section 123.50(3) should be interpreted differently from the statute in *Patchette*.

Not all habitual offender statutes are recidivist statutes. The legislature has enacted statutes that punish habitual offenders more severely based on the pure number of their statutory violations without considering the persistence of the conduct to punish recidivism more severely. *See, e.g.*, *Thomas*, 275 N.W.2d at 422–23 ("[T]he statute defines habitual offender as one who has accumulated three convictions for separate and distinct offenses. It focuses on the number of convictions rather than on the persistency of the conduct."); *Wade*, 467 N.W.2d at 285 ("Wade relies on the general rule of recidivism statutes which is that the second *offense* must come after the earlier conviction. However, the general rule must yield to specific language in the statute defining its terms."). This distinction—whether the text of the statute punishes the persistency of illegal conduct or the total number of offenses—is outcome-determinative here.

Our decisions in *State v. Thomas* and *State v. Wade* also illustrate that section 123.50(3) is aimed at the sequence rather than the total number of violations. *See Thomas*, 275 N.W.2d at 422–23; *Wade*, 467 N.W.2d at 285. In *Thomas*, the statute at issue defined a "habitual offender" as "any person who has accumulated convictions for separate and distinct offenses" of certain traffic laws, and "[t]*hree or more convictions* within a six-year period" suspended the habitual offender's driving privileges. 275 N.W.2d at 422–23 (emphasis added) (quoting Iowa Code § 321.555(1)). So, when a driver received two convictions for reckless driving and driving without a license that resulted from the same

underlying acts, it did not matter under the statute that the traffic violations occurred at the same time. *Id.* The statute merely contemplated whether the driver "accumulated three convictions for separate and distinct offenses." *Id.* at 423. Because reckless driving and driving without a license are "separate and distinct offenses" that put the defendant over the statute's threshold of three convictions within six years, the defendant qualified as a habitual offender and had their driver's license suspended. *Id.* Recidivist principles did not apply because the statute referred to the number of violations rather than the persistence of the offender's conduct. *Id.* ("[T]he legislature intended three convictions within six years to be grounds for suspension without the added condition that each must occur at a different time."). *Thomas* turned on the statute's use of cardinal numbers rather than ordinal numbers.

The general assembly also avoids recidivist principles by expressly defining "second offense" in the operative statute. In *Wade*, the defendant challenged his treatment as a second offender under what is now Iowa Code section 124.411 (2026) (previously codified at section 204.411 (1989)) because he hadn't been convicted of his first drug offense when he committed a second one. *See* 467 N.W.2d at 285. "Wade relie[d] on the general rule of recidivism statutes which is that the second *offense* must come after the earlier conviction." *Id.* We rejected Wade's argument because "the general rule must yield to specific language in the statute defining its terms." *Id.*; *accord State v. Gardner*, 18 N.W.3d 487, 490 (Iowa 2025) (same with respect to Iowa Code § 907.3(1)(*a*)(2)–(3) (2023)). And the statute did just that where it expressly provided:

> For purposes of this section, an offense is considered a second or subsequent offense, if, *prior to the person's having been convicted of the offense, the offender has ever been convicted* under this chapter

or under any state or federal statute relating to narcotic drugs or cocaine, marijuana, depressant, stimulant, or hallucinogenic drugs.

*Wade*, 467 N.W.2d at 285 (quoting Iowa Code § 204.411(2) (1989)). "This statute," we concluded, "is quite clear: A defendant is a second offender if his conviction for the second offense follows his conviction for the first. The statute does *not* require the first conviction to precede the commission of the second offense." *Id.* (emphasis added). If section 123.50(3) had a similar definition as that contained in section 204.411(2), the majority would be correct that "two violations—a first violation and a 'second violation'—'within two years' " would suffice for enhanced punishment. But it doesn't—a critical point the majority fails to address.

The development of operating while intoxicated (OWI) law in Iowa further demonstrates that the general assembly distinguishes between habitual offender statutes that punish recidivism compared to those that punish the number of offenses. In 1984, Iowa law provided that a person's "first offense" of OWI was a serious misdemeanor, the "second offense" was an aggravated misdemeanor, and the "third offense and each subsequent offense" was a class "D" felony. *State v. Clark*, 351 N.W.2d 532, 536 (Iowa 1984) (quoting Iowa Code § 321.281(2) (1981)), *superseded by statute*, 1986 Iowa Acts ch. 1220, § 2, *as recognized in*, *State v. Spoonemore*, 598 N.W.2d 311, 311 (Iowa 1999). In *State v. Clark*, we held that the enhanced penalty for a "third offense" did not apply when two prior OWI convictions occurred on the same day. *Id.* at 536–37. We interpreted that statute's sequential language using ordinal numbers to require each prior OWI to have reached final judgment for an enhancement to apply to a subsequent OWI. *Id.*

The general assembly then amended the OWI statute "[i]n an apparent response to our decision in the *Clark* case." *Spoonemore*, 598 N.W.2d at 311. In

*State v. Spoonemore*, the operative statutory language specified that "[e]ach previous violation shall be considered a separate previous offense." *Id.* at 312 (quoting Iowa Code § 321J.2). We said the amended statute "clearly negates the [recidivist] characterization of prior offenses that this court adopted in the *Clark* case." *Id.* The legislature expressly provided that each OWI violation enhanced punishment without regard to the sequence of offenses and convictions. *See id.* at 311–12 (holding that two prior OWI convictions counted as multiple prior offenses despite being entered on the same day—after we reached the opposite conclusion in *Clark*). The statute here is more like the original statute in *Clark* than the revised statute in *Spoonemore* because it uses sequential language without defining when enhanced penalties apply. *See* Iowa Code § 123.50(3) (2022).

Here, nothing in the statute mandating civil penalties to alcohol licensees for illegal sales to minors removes it from our *Conley* line of caselaw. *See* 222 N.W.2d at 503. The statutes in *Thomas*, *Wade*, and *Spoonemore* legislated around the well-established general rule for recidivist statutes by expressly punishing habitual offenders for the number of statutory violations they accumulated without regard to whether each subsequent violation followed the prior conviction. Section 123.50(3) is not the same. It "provides a graduated punishment on a step-by-step basis," which "makes the statute more closely resemble the traditional habitual offender statute than the type" that punishes numerosity instead of persistency. *Patchette*, 374 N.W.2d at 401.

The relevant inquiry, then, is not whether there were two underlying violations of section 123.49(2)(*h*), like Beecher's store clerk committed by making two illegal alcohol sales in back-to-back transactions within seconds of one another. *Cf. id.* at 400–01 (rejecting enhanced penalties under a recidivist statute

despite five simultaneous underlying violations). The inquiry is instead whether a licensee's employee has been convicted of violating section 123.49(2)(*h*)—or the Iowa Alcoholic Beverages Division (ABD) has made an administrative finding that the licensee violated section 123.49(2)(*h*)—prior to the second violation. A first conviction or finding is a prerequisite for section 123.50(3)(*b*)'s enhanced penalty to apply. That is lacking here, so Beecher's penalty for a "second violation" should be vacated.

**B. The Majority Ignores Prior Cases to Avoid Engaging with Our Recidivist Precedents.** The majority relies on two key premises to avoid engaging with our precedents on recidivist statutes. First, it asserts that section 123.50(3) is unambiguous—its "text could hardly be clearer or plainer." But we held over twenty years ago (in a case not mentioned by the majority) that a functionally identical civil penalty scheme for illegal underage sales of tobacco products *was* ambiguous. *See Nash Finch Co. v. City Council*, 672 N.W.2d 822, 826 (Iowa 2003) (discussing Iowa Code § 453A.22(2) (1999)). That statute, like section 123.50(3), did not "expressly state when a violation should be considered a 'second,' 'third,' or 'fourth' violation." *Id.*

Second, the majority contrasts the "principle of strict construction" used to interpret a criminal penal statute, *Conley*, 222 N.W.2d at 503, with the liberal construction provision in the Iowa Alcoholic Beverage Control Act, *see* Iowa Code § 123.1. But, again, the majority doesn't mention that we have rejected the argument that a particular term in a recidivist statute "should not suffer the same limited interpretation accorded it in penal statutes" just because it is "not a penal statute and thus . . . not subject to strict construction." *Hajek v. Iowa State Bd. of Parole*, 414 N.W.2d 122, 124 (Iowa 1987) (en banc). Removing these

faulty premises, the majority's already-sparse support for its rejection of recidivist principles withers away entirely.

1. *Section 123.50(3) is ambiguous.* Statutory text is ambiguous when "reasonable minds could differ or be uncertain as to the meaning of the statute." *Est. of Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, 838 (Iowa 2023) (quoting *State v. Coleman*, 907 N.W.2d 124, 135 (Iowa 2018)). Specific language can create ambiguity, as can "the context of the entire statute or related statutes." *Id.* (quoting *Sherwin–Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 425 (Iowa 2010)). "In many cases, we have identified statutory text that, although clear in isolation, becomes ambiguous in a statute's broader context." *Id.* at 839; *accord Iowa Ins. Inst. v. Core Grp. of the Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015) ("[E]ven if the meaning of words might seem clear on their face, their context can create ambiguity."). "[C]ontext is critical, and context comes from 'the language's relationship to other provisions of the same statute and other provisions of related statutes.'" *Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 681 (Iowa 2022) (quoting *Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021)); *accord* Iowa Code § 4.1(38) ("Words and phrases shall be construed according to the context and the approved usage of the language . . . .").

In construing an ambiguous statute, we start with the presumption that the general assembly understands the state of the law. *See, e.g.*, *Simon Seeding & Sod, Inc. v. Dubuque Hum. Rts. Comm'n*, 895 N.W.2d 446, 467 (Iowa 2017); *Rhoades v. State*, 880 N.W.2d 431, 446 (Iowa 2016); *Iowa Farm Bureau Fed'n v. Env't Prot. Comm'n*, 850 N.W.2d 403, 434 (Iowa 2014); *Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013); *State v. Adams*, 810 N.W.2d 365, 370 (Iowa 2012); *Hines v. Ill. Cent. Gulf R.R.*, 330 N.W.2d 284, 288–89

(Iowa 1983); *Jahnke v. Inc. City of Des Moines*, 191 N.W.2d 780, 787 (Iowa 1971). That canon is especially instructive here because we have repeatedly said that "unless the legislature expressly provided otherwise," habitual offender statutes using sequential language like that contained in section 123.50(3) require a conviction for the first violation before an enhanced penalty for a subsequent offense applies. *Freeman*, 705 N.W.2d at 291. We have long followed "the general rule of recidivism statutes which is that the second *offense* must come after the earlier conviction" while recognizing that "the general rule must yield to specific language in the statute." *Wade*, 467 N.W.2d at 285.

The majority can conclude that section 123.50(3) is unambiguous only by ignoring fifty-plus years of cases where we have used recidivist principles to interpret habitual offender statutes using language like that at issue here. *E.g.*, *Freeman*, 705 N.W.2d at 288–91. The consistency provided by stare decisis is especially important when we are interpreting statutes because the general assembly can change the statute's language if it intended something different. *See Bd. of Water Works Trs. v. Sac Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 61 (Iowa 2017). Even if the majority disagrees with Beecher's position, it should at least acknowledge that "reasonable minds could differ or be uncertain as to the meaning of the statute." *Est. of Butterfield*, 987 N.W.2d at 838 (quoting *Coleman*, 907 N.W.2d at 135). The majority instead takes the easy way out by declaring the statute unambiguous, sidestepping the need to engage with the state of the law on recidivist statutes.

The problem for the majority, though, is that we have already held that a civil penalty scheme identical to the one in section 123.50(3) is in fact ambiguous in determining when its enhanced penalties apply. *Nash Finch Co.*, 672 N.W.2d at 826 (holding that Iowa Code section 453A.22, the equivalent civil penalty

statute for underage tobacco sales, is ambiguous as to what constitutes a "second violation"). Perhaps unsurprisingly, the majority just omits discussion of *Nash Finch Co. v. City Council* from its opinion, too.

Section 123.50(3) is indistinguishable from section 453A.22, which governs underage sales of tobacco products rather than alcohol. *See id.* at 826–27. The civil penalties provision for underage sales of tobacco products provides as follows:

> 2. If a retailer or employee of a retailer has violated section 453A.2 or section 453A.36, subsection 6, the department or local authority, . . . in addition to the other penalties fixed for such violations in this section, shall assess a penalty upon the same hearing and notice as prescribed in subsection 1 as follows:
>
> *a.* For a first violation, the retailer shall be assessed a civil penalty in the amount of three hundred dollars. Failure to pay the civil penalty as ordered under this subsection shall result in automatic suspension of the permit for a period of fourteen days.
>
> *b.* For a second violation within a period of two years, the retailer shall be assessed a civil penalty in the amount of one thousand five hundred dollars or the retailer's permit shall be suspended for a period of thirty days. The retailer may select its preference in the penalty to be applied under this paragraph.
>
> *c.* For a third violation within a period of three years, the retailer shall be assessed a civil penalty in the amount of one thousand five hundred dollars and the retailer's permit shall be suspended for a period of thirty days.
>
> *d.* For a fourth violation within a period of three years, the retailer shall be assessed a civil penalty in the amount of one thousand five hundred dollars and the retailer's permit shall be suspended for a period of sixty days.
>
> *e.* For a fifth violation within a period of four years, the retailer's permit shall be revoked.

Iowa Code § 453A.22(2). We said this language was ambiguous because "[i]t does not . . . expressly state when a violation should be considered a 'second,' 'third,'

or 'fourth' violation by the particular retailer." *Nash Finch Co.*, 672 N.W.2d at 826.

The civil penalties for underage alcohol sales are likewise ambiguous because the statute functions in exactly the same way as the one for tobacco products:

> 3. If any liquor control licensee, wine or beer permittee, or employee of a licensee or permittee is convicted or found in violation of section 123.49, subsection 2, paragraph "h", the administrator or local authority shall, in addition to criminal penalties fixed for violations by this section, assess a civil penalty as follows:

> *a.* A first violation shall subject the licensee or permittee to a civil penalty in the amount of five hundred dollars. Failure to pay the civil penalty as ordered under section 123.39 shall result in automatic suspension of the license or permit for a period of fourteen days.

> *b.* A second violation within two years shall subject the licensee or permittee to a thirty-day suspension and a civil penalty in the amount of one thousand five hundred dollars.

> *c.* A third violation within three years shall subject the licensee or permittee to a sixty-day suspension and a civil penalty in the amount of one thousand five hundred dollars.

> *d.* A fourth violation within three years shall result in revocation of the license or permit.

Iowa Code § 123.50(3). If section 453A.22(2) is ambiguous, as we said in *Nash Finch Co.*, it's hard to accept the majority's conclusion that the same language in section 123.50(3) is not.

The majority opinion states that the statutory text "could hardly be clearer or plainer" on this point: two criminal sales under section 123.49(2)(*h*) within two years must constitute both a first and second violation under section 123.50(3). But it could be clearer and could be plainer—if it were like the statutes at issue in *Wade* or *Spoonemore*. As discussed above, the analysis changes when a statute expressly defines what counts as a second offense for recidivism

purposes. But section 123.50(3) does not. And when the general assembly does not expressly declare that a second offense counts irrespective of sequence, then "the general rule that each offense must be complete as to a conviction . . . before commission of the next in order to qualify for the enhancement of penalty under a habitual offender statute" applies. *Freeman*, 705 N.W.2d at 291.

At a minimum, section 123.50(3) is ambiguous. The majority is wrong to claim otherwise.

2. *A liberal construction cannot defeat the statute's text.* The majority's second flawed premise is that recidivist principles cannot apply because the general assembly declared that chapter 123 "shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace, morals, and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose." Iowa Code § 123.1. That general declaration does not allow us to ignore—as the majority so adamantly does—our recidivism precedents. Recidivism principles do not, as the majority asserts, turn on principles of strict construction. Indeed, we have expressly rejected the argument that recidivist principles necessarily rely on strict construction. *Hajek*, 414 N.W.2d at 123–24.

"Laws can be more readily understood and uniformly applied when terms do not shift in meaning from one statute to another." *Id.* at 124. In *Hajek v. Iowa State Board of Parole*, we thus held that a parole statute's use of "prior convictions" meant that it was a recidivist statute even though it was "not a penal statute" that is "subject to strict construction." *Id.*; *see also Conley*, 222 N.W.2d at 502 (noting that a statute is recidivist when it "emphasizes conviction and disposition of the prior offense"). Whether the public policy underlying a statute is to "punish offenders" or "protect the public," the text of

the statute governs all the same. *Hajek*, 414 N.W.2d at 124. And here, the majority fails to give due weight to the sequential language in section 123.50(3) imposing escalated civil penalties.

"[O]ur duty in construing this statute, even with the instruction to construe it broadly, requires first that we provide 'a fair interpretation as opposed to a strict or crabbed one . . . .' " *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 702 (Iowa 2022) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 233 (2012)). A liberal construction to protect against the dangers of alcohol cannot brush aside the recidivist scheme in the text of section 123.50(3) to instead impose more severe penalties on a licensee than the text allows. *See id.* ("Such a provision doesn't allow courts to ignore the ordinary meaning of words in a statute and to expand or contract their meaning to favor one side in a dispute over another. We effectuate the statute's 'purposes' by giving a fair interpretation to the language the legislature chose; nothing more, nothing less.").

\*     \*     \*

Because section 123.50(3) is ambiguous and a liberal construction cannot override the text of the statute, I would apply our long-held general rule for recidivist statutes. The language used in section 123.50(3) is "aimed at persistent or repeated conduct" rather than "the number of offenses." *Patchette*, 374 N.W.2d at 401.

Even the ABD concedes that the majority's holding is unfair to alcohol licensees. Before the ALJ, it "acknowledged the general question of 'fairness' raised by [the police department's] methods"—that is, procuring multiple violations under the civil scheme in one age-compliance check based on the number of buyers the police sent into the store. *See Walsh v. Kirby*, 529 P.2d 33,

40–41 (Cal. 1974) (en banc). The ALJ similarly noted that Beecher's argument "that it generally seems unfair to assess back-to-back penalties to the licensee without the opportunity for the licensee to take corrective action following the first penalty" was "a rational and reasonable argument [that] is well received." On petition for judicial review, the district court also recognized that Beecher made "compelling arguments, specifically regarding the rule for recidivist statutes and the public policy implications of this statute." And at oral argument before our court, the ABD again conceded that its position "has that feeling of unfairness to it." Properly applying our jurisprudence concerning recidivist statutes avoids that unfairness. *See, e.g., Tindal*, 949 N.W.2d at 644–45; *Patchette*, 374 N.W.2d at 399–401; *Freeman*, 705 N.W.2d at 288–91; *Conley*, 222 N.W.2d at 503. Unfortunately, the majority's oversimplified reading of section 123.50(3) repeats the mistakes below.

Section 123.50(3) does not, as the majority holds, punish the number of alcohol sales involved in a particular violation. It punishes persistent conduct more severely only after a licensee has previously been convicted or found in violation of section 123.49(2)(*h*). I would therefore reverse the district court and remand the case to dismiss the enhanced penalty against Beecher for a "second violation" under section 123.50(3)(*b*).

Christensen, C.J., and McDermott, J., join this dissent.